(No. 53139.—)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. WILLIAM SEYMOUR, Appellee.

*Opinion filed February 3, 1981.*

SIMON, J., took no part.

Tyrone C. Fahner and William J. Scott, Attorneys General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald Mackay, Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Marcia B. Orr and Mary Ellen Dienes, Assistant State's Attorneys, of Chicago, of counsel), for the People.

Sam Adam, of Chicago, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, William Seymour, was found in possession of cocaine and charged with possession of a controlled substance. Prior to trial, the defendant filed a motion to suppress the cocaine, which he alleged was taken from him following a strip search. The Cook County circuit court allowed the motion and suppressed the evidence. The appellate court affirmed. (80 Ill. App. 3d 221.) We granted the State leave to appeal under our Rule 315. 73 Ill. 2d R. 315.

On July 27, 1977, at about 9 p.m., Sergeant Neilson and Officer Cronin were patroling the vicinity of 450 North Clark Street in Chicago in a marked squad car. The defendant was observed leaning into the passenger side of a parked automobile. When the officers pulled their car up behind the parked vehicle, the defendant stood up and began to walk away from them. Neilson got out of the squad car, noticed that the parked car had keys in its ignition, and ordered the defendant to stop. Seymour's shirt was hanging outside of his pants as the police approached him. When Sergeant Neilson asked Seymour for some identification, the defendant began to reach into his pants pocket. Before he could, Neilson patted him down. Neilson found a loaded .38-caliber revolver in Seymour's

waistband. The officers immediately placed Seymour under arrest and called for a vehicle to transport defendant to the 18th district police station. While waiting in Sergeant Neilson's squad car, Seymour stated that the parked car was his and that he had a gun registration card for the revolver. Officer Cronin testified that, while waiting, Seymour also mentioned that he had been in the penitentiary before and had a narcotics case pending, and he couldn't take the heat. He asked Sergeant Neilson to give him a break. Seymour later denied making such a comment. When a second squad car arrived at the scene to take Seymour to the station, he was again superficially searched. After arriving at the station, Seymour was again given a pat-down search.

Once at the police station, the defendant was fingerprinted. The fingerprint apparatus was located in the lockup area. After being fingerprinted, the defendant went to a sink in the lockup area to wash his hands. The two arresting officers did not accompany the defendant to the police station but arrived after he had been fingerprinted. Officer Cronin approached the defendant as he finished washing his hands and directed the defendant to remove his clothing. Officer Cronin testified that after the defendant removed his shoes the officer found a tinfoil packet in one of the shoes. The defendant testified that he was required to strip naked and the officer inspected him visually, after which the officer found the tinfoil packet in one of the defendant's socks. The packet contained .22 grams of cocaine. The defendant was charged with possession of a controlled substance. Ill. Rev. Stat. 1977, ch. 56½, par. 1402.

At the hearing on the motion to suppress, the court made a finding that the initial arrest on the street was valid. The defendant's motion to suppress the gun, therefore, was denied. The court stated its belief that the police would then be allowed a reasonable length of time

to detain the defendant so as to check his identity and prepare charges against him. However, the court found that, once at the police station, the defendant should have been advised that he was charged with a misdemeanor which was bailable. It should then have been determined whether the defendant could make bail and, if not, only then could he be incarcerated. The court held that, if a determination were made that the defendant could not post bail, he then could be searched before being placed in the lockup. Because the defendant was not notified that he was being charged with a bailable offense and of his right to post bail, and since he had enough money with him to post the preset bail, he should not have been placed in the lockup and, consequently, should not have been searched. The discovered cocaine was therefore suppressed, and the finding of probable cause was vacated.

The appellate court, in affirming the judgment of the circuit court, held that the police are required to advise all arrestees charged with a misdemeanor of their right to post bail immediately. The appellate court further held that, although the defendant could be detained a reasonable time for further investigation, he could not be placed in the police lockup and strip-searched during that time.

We will first address the question of whether it was necessary for the officers to inform the defendant of his right to post bail. The appellate court found such a requirement not as being constitutionally mandated, but as being required by that court's construction of the provisions of our Rule 528(c) (73 Ill. 2d R. 528(c)), which presets the amount of bail for the class of misdemeanors that includes the offense involved in this case, and from the provisions of section 103—7 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 103—7), which requires that posters informing the defendant of certain rights be posted in certain conspicuous places. We need not discuss the cases from Michigan,

Colorado and California relied on by the appellate court, because it is clear that our legislature, in enacting section 103—7 of the Code of Criminal Procedure of 1963, did not intend to require that a defendant be orally informed of his right to post bail. The committee comments to this section, as originally adopted in 1963, state:

> "Defense representatives strongly urged a requirement in the Code that the arresting officer inform an arrestee of his rights. Others strongly opposed such a requirement. The Committee was not persuaded that the officer was the proper medium for conveying such information fully and understandably. This section was proposed as a compromise. It was accepted." (Ill. Ann. Stat., ch. 38, par. 103—7, Committee Comments, at 84 (Smith-Hurd 1970).)

The General Assembly apparently felt that informing the accused of his rights through printed information contained on posters located as required by statute was adequate and more likely to accurately inform an accused. It should be noted that, in situations where the General Assembly intended that the defendant be personally informed of certain rights by specified individuals, it clearly stated so in the Code. (See Ill. Rev. Stat. 1979, ch. 38, par. 103—1(a) (shall inform the person arrested that a warrant has been issued for his arrest and the nature of the offense); Ill. Rev. Stat. 1979, ch. 38, par. 103—1(b) (after an arrest without a warrant—shall inform the person arrested of the nature of the offense upon which the arrest is based); Ill. Rev. Stat. 1979, ch. 38, par. 109—1(b)(1) (after arrest the judge shall inform the defendant of the charge against him); and Ill. Rev. Stat. 1979, ch. 38, par. 109—1(b)(2) (must advise the defendant of his right to counsel).) We conclude that the legislature did not intend to require that a defendant be orally advised by the police of his right to post bail.

It is also contended, and the trial court and the appellate court held, that since the defendant was lawfully arrested on an unlawful-use-of-weapons charge (Ill. Rev.

Stat. 1977, ch. 38, par. 24–1(a)(10)), which is a Class A misdemeanor (Ill. Rev. Stat. 1977, ch. 38, par. 24–1(b)), and for which preset bail was fixed at $1,000 with the 10% deposit statute applicable (73 Ill. 2d R. 530), he should have been admitted to bail without having been placed in the lockup area of the police station. Noting that the defendant had over $300 in cash on him when arrested, the court found there was no question as to his ability to post the amount of preset bail. It is urged that, since the defendant had the right to and could post bail, the police had no right to detain him and no need or right to conduct a search. Since the search was unauthorized, it is argued, the seizure of the tinfoil packet containing the controlled substance was illegal and the evidence was properly suppressed.

Although the unlawful use of weapons is only a Class A misdemeanor for which preset bail is provided by our Rule 528(c), the offense becomes a Class 3 felony if committed within five years after the accused's release from prison or within five years after conviction if no prison sentence was imposed for a prior felony conviction. (Ill. Rev. Stat. 1977, ch. 38, par. 24–1(b).) The officer stated that, following the arrest, the defendant asked for a break because he had a previous felony conviction. Acceptable police procedures would require that the officers ascertain whether or not that conviction was within the period of time that would make the weapons charge a Class 3 felony. In fact, because of the possibility that this arrest involved a felony and not just a misdemeanor, a further routine identification check would be in order, even in the absence of such a remark by the suspect. In making this determination, it was necessary that the defendant be fingerprinted and that the fingerprints be processed through identification procedures. It was testified that this would require two to three hours. The trial court, in passing on the motion to suppress, stated its disbelief that

detention for this period of time would be necessary. However, there is no evidence in the record that indicates a lesser period of time was required for the proper identification. It must be assumed that it was therefore necessary that the defendant be detained for whatever time was required and that he could not be permitted to immediately post bail for a misdemeanor and be released.

Since the police were authorized to detain the defendant, the question then becomes what should be the nature of the detention, whether a search of the defendant was justified, and, if so, to what extent he could be searched. We will postpone for the present the question of defendant's detention and consider the questions relating to search. The officers here effected a lawful arrest on the weapons charge and properly had the defendant transported to the police station. Section 108—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108—1) provides that, when a lawful arrest is made by an officer, the officer may reasonably search the person arrested for the purpose of (a) protecting the officer from attack, (b) preventing the person from escaping, (c) discovering the fruits of the crime, or (d) discovering any instruments, articles or things that had been used in the commission of, or which may constitute evidence of, any offense. The right to search a person incident to a lawful arrest for these purposes does not, however, depend solely upon the provisions of our statute. Such a right has long been recognized both in England and in this country. (*Weeks v. United States* (1914), 232 U.S. 383, 392, 58 L. Ed. 652, 655, 34 S. Ct. 341, 342; *United States v. Rabinowitz* (1950), 339 U.S. 56, 60, 94 L. Ed. 653, 657, 70 S. Ct. 430, 432-33.) The fact that the search is conducted at the police station rather than at the place of arrest does not by itself render the search invalid. *United States v. Edwards* (1974), 415 U.S. 800, 803, 39 L. Ed. 2d 771, 775, 94 S. Ct. 1234, 1237; *People v. Campbell* (1977),

67 Ill. 2d 308, 319.

In *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467, the court considered the historical development of the right to search without a warrant incident to a lawful arrest. The court held that, while the justification to search a person incident to a lawful custodial arrest is based on the need to disarm and discover evidence, it does not depend upon what a court may later decide was the probability in a particular situation that weapons or evidence would, in fact, be found on the suspect. The court stated:

> "A custodial arrest of a suspect based on probable cause is a reasonable instrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. *** [I]n the case of a lawful custodial arrest *a full search of the person* is not only an exception to the warrant requirement of the Fourth Amendment, but it is also a 'reasonable' search under that Amendment. (Emphasis added.) (*United States v. Robinson* (1973), 414 U.S. 218, 235, 38 L. Ed. 2d 427, 440-41, 94 S. Ct. 467, 477.)

In *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476, the court held that the search of a suspect's person incident to a lawful arrest may be conducted without a warrant, whether or not there is probable cause to believe that the suspect may have a weapon or is about to destroy the evidence. The potential danger lurking in all custodial arrests makes such searches reasonable. In our case we must conclude that the officers, having effected a lawful arrest of the defendant, could conduct a search of his person while he was detained at the police station. The Supreme Court, since *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, has quite consistently stated the authority to

search the person incident to arrest in terms which suggest that there is no limitation based on probable cause to believe that weapons or evidence of a crime will be found, and that the intensity of the search is not limited to the extent necessary to find items reasonably believed to be on the arrestee's person. See 2 W. LaFave, Search and Seizure sec. 5.2, at 266 (1978).

The fourth amendment of the Federal Constitution and article I, secton 6, of the Illinois Constitution of 1970 prohibit unreasonable searches and seizures. There is no uniform rule for determining the reasonableness of a search. The determination of that question must depend upon the facts of a given case. (*United States v. Rabinowitz* (1950), 339 U.S. 56, 94 L. Ed. 653, 70 S. Ct. 430; *People v. Palmer* (1976), 62 Ill. 2d 261; *People v. Watkins* (1960), 19 Ill. 2d 11.) In *Terry v. Ohio* (1968), 392 U.S. 1, 18-19, 20 L. Ed. 2d 889, 903-04, 88 S. Ct. 1868, 1878, the court noted that a search which is reasonable in its inception may violate the fourth amendment by virtue of its intolerable intensity and scope. In *Terry,* the court also noted that although a search incident to an arrest is justified in part by the necessity to protect an officer from assault with a concealed weapon, it is also justified on other grounds and can therefore involve a relatively intensive exploration of a person. Although *Terry* indicated that the scope and intensity of the search must be justified by the circumstances which rendered its initiation permissible, the Supreme Court subsequently, in *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467, and the companion case of *Gustafson v. Florida* (1973), 414 U.S. 260, 38 L. Ed. 2d 456, 94 S. Ct. 488, has not seen fit to so limit the authority to conduct a full search of the person incident to a lawful custodial arrest. In fact, the *Robinson* majority stated the "general authority" to search incident to a custodial arrest in absolute terms: "Once there is a custodial arrest

a 'full search of the person' requires no 'additional justification.' [414 U.S. 218, 235, 38 L. Ed. 2d 427, 441, 94 S. Ct. 467, 477.]'' See 2 W. LaFave, Search and Seizure secs. 5.2(a), (b), at 262-70 (1978).

In *People v. Hayes* (1973), 55 Ill. 2d 78, the defendant was arrested for a firearms violation and was searched and a controlled substance was found on his person. This court held that the search was justified as incident to the arrest. In *People v. Holloman* (1970), 46 Ill. 2d 311, the defendant was arrested for not having a valid driver's license, and a search incident to the arrest was conducted, during which an envelope was discovered attached to his back. The envelope contained a controlled substance. The search was held to be valid. Although neither of these cases involved a strip search, the facts in *Hayes* are similar to those in our case, and the arrest in *Holloman* was for a much less serious offense. In light of these cases, it cannot be argued that the police could not search the defendant's person. The question then is whether the search, although reasonable in its inception, became an unreasonable search because of its intensity.

Defendant here emphasizes the degrading nature of a strip search and contends that such an invasion of his rights was not justified as incident to his arrest for what he terms a minor offense. Without a doubt, a strip search is a serious invasion of one's rights, and because of the intensity, when made following an arrest for certain minor offenses, could be viewed as a fourth amendment violation. In this case we need not decide the nature or boundaries of this limitation or how to apply it. Various suggestions have been made. (See 2 W. LaFave, Search and Seizure sec. 5.2(g), at 288-90 (1978).) However, even in such cases, a reasonable belief that the person arrested has on his person a weapon or contraband may justify the intensive invasion of his privacy. In our case, however, we are dealing with a person who has been charged

with a weapons offense. Although a misdemeanor, it is not a minor offense in the same sense that certain traffic offenses can be said to be minor offenses. It was sufficiently serious to require that the defendant be held at least until it could be determined whether he should be charged with a felony. Although cursory searches had failed to disclose any additional weapons during the search at the scene of the arrest, or subsequently at the station, it was not unreasonable, under the circumstances, to conduct a strip search at the police station.

As the dissenters in *United States v. Robinson* acknowledged:

> "If the individual happens to have a weapon on his person, he will certainly have much more opportunity to use it against the officer in the in-custody situation. The prolonged proximity also makes it more likely that the individual will be able to extricate any small hidden weapon which might go undetected in a weapons frisk, such as a safety pin or razor blade. In addition, a suspect taken into custody may feel more threatened by the serious restraint on his liberty *** and may therefore be more likely to resort to force." *United States v. Robinson* (1973), 414 U.S. 218, 254, 38 L. Ed. 2d 427, 451, 94 S. Ct. 467, 485 (Marshall, J., dissenting).

Officer Cronin testified that criminals usually conceal weapons or contraband where they are not easily detected. He personally has found guns, knives, items of contraband and other evidence during strip searches that ordinarily would not be found in a routine search. These items were found in undergarments, socks, and on the person, primarily concealed in the crotch area. It was not necessary that Officer Cronin have probable cause to believe that the suspect had concealed on his person weapons that might be used to effect his escape or to harm himself or others.

The potential for danger inherent in the custodial arrest and the holding of the defendant in our case made the strip search reasonable. (See *United States v. Chadwick* (1977), 433 U.S. 1, 14-15, 53 L. Ed. 2d 538, 550, 97 S. Ct. 2476, 2485.) By approving a strip search incident to the custodial arrest of the defendant in this case we do not mean to adopt the broad language of *United States v. Robinson* and *Gustafson v. Florida* and do not permit the intensive intrusion of a strip search into one's privacy in all custodial arrests. In fact we here acknowledge that a strip search may be entirely unreasonable and a violation of constitutional rights when conducted incident to custodial arrests in certain situations. We are here saying only that the arrest in this case was not one of those situations.

As noted earlier, it was necessary to hold the defendant for a period of time, possibly as long as two or three hours. If he had not been confined in the lockup, but had remained in the room where the traffic and disorderly conduct cases were being booked, and if he would have produced a weapon that had been well concealed, the police would have been subject to deserved criticism if someone would have been injured or if the defendant would have escaped. As noted, the dangers in the circumstances of a custodial arrest are sharply accentuated by the prolonged proximity of the accused to police personnel and others following the arrest. The crucial distinguishing feature of the custodial arrest is not the greater likelihood that a person taken into custody is armed, but rather the increased likelihood of danger to the officer and to others *if* in fact the person is armed. See *United States v. Robinson* (1973), 414 U.S. 218, 253, 38 L. Ed. 2d 427, 451, 94 S. Ct. 467, 485 (Marshall, J., dissenting); 2 W. LaFave, Search and Seizure sec. 5.2, at 278 (1978).

Since it was necessary to hold the defendant until it could be ascertained whether he should be charged with a felony or a misdemeanor, for safety and security reasons it

was proper to hold him in the lockup. The officials in charge of the jail have a strong interest in preventing contraband drugs and especially weapons from entering the lockup. Although one confined to a jail does not lose his constitutional rights, they are, nonetheless, diminished by the needs of the institutional environment. See *Bell v. Wolfish* (1979), 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1816; *United States v. Lilly* (5th Cir. 1978), 576 F.2d 1240, 1244-46.

The trial court appears to have viewed this search only in relation to the incarceration of the defendant. That is, the court felt that the defendant could have been detained for the time necessary to check his past conviction record without placing him in the lockup area of the police station. Therefore, the court reasons, no search was justified. Although we have held that the defendant was properly detained, the right to search him did not depend solely upon whether or not he was detained in the lockup. The right to search the defendant also finds its justification as incident to his custodial arrest, which is distinct from the need to search one who is incarcerated in order to prevent weapons or contraband from entering the detention facility. There are, in fact, two justifications for the search of the defendant, who was under custodial arrest and was properly detained in the lockup: (1) a search incident to a custodial arrest and (2) a search prior to incarceration to safeguard the detention facility.

A strip search is no doubt a severe intrusion into one's privacy. Some contend that such a search should be authorized only upon a showing of probable cause to believe that the suspect is concealing weapons or evidence which may be destroyed. (See Shuldiner, *Visual Rape: A Look at the Dubious Legality of Strip Searches,* 13 J. Mar. L. Rev. 273 (1980).) However, such searches have been approved as incident to an arrest without the showing of probable cause (see *United States v. Klein* (1st Cir.

1975), 522 F.2d 296) and as a search prior to incarceration. (See *United States v. Tillery* (E.D. Pa. 1971), 332 F. Supp. 217; 2 W. LaFave, Search and Seizure sec. 5.3, at 307 (1978).) In *United States v. Klein* the court held that a brief strip search of a defendant, conducted without abuse and in a professional manner, is not unconstitutional and stated that "the modesty of one lawfully arrested must give way to reasonable precautionary procedures designed to detect hidden evidence, drugs, or objects which might be used against others or to cause self-inflicted harm." *United States v. Klein* (1st Cir. 1975), 522 F.2d 296, 300-01.

Subsequent to the trial court order suppressing the evidence in this case, the General Assembly amended section 103—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 103—1). That section now specifically deals with strip searches. By discussing the amendment we do not intend to construe it or to pass on its validity. The amendment specifically prohibits strip searches of a person arrested "for a traffic, regulatory or misdemeanor offense" unless there is reasonable belief that the individual is concealing a weapon or controlled substance. The amendment specifically excepts from this prohibition cases involving weapons or controlled substances. Thus, the search of the defendant in our case would have been authorized under amended section 103—1. We need not decide whether the class of offenses in which the legislature has prohibited strip searches are also offenses where such a search would violate fourth amendment rights. We simply note that where an arrest has been made on a weapons charge, a strip search is authorized by the amendment without the necessity of having a reasonable belief that the individual is concealing a weapon. Regardless of the constitutional dimensions of the right to conduct a strip search incident to a custodial arrest, which we have herein found it un-

necessary to define, such searches conducted after September 21, 1979, the effective date of the amendment, will be governed by the limitations of section 103—1, unless, of course, a provision of that section is found to be violative of constitutional rights.

The trial court, in granting the motion to suppress, stated that, once the defendant was at the police station, he should have been informed that he was charged with a bailable offense and that the amount of the bail had been set by rule of court and inquiry should have been made of the defendant whether he could make bail before he was incarcerated. The court stated that he should have been incarcerated only if he could not make bail and he should have been subjected to further search only upon entering the lockup. We have dealt with these questions above. The court did not address the question of a search incident to a lawful arrest. Under the law as set forth herein, and the facts of this case, we conclude that the trial court erred in suppressing the evidence seized following the strip search of the defendant.

The order of the circuit court of Cook County suppressing the evidence is reversed, as is the judgment of the appellate court affirming the order of the circuit court.

*Reversed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.