Mary Ann TIKALSKY,
Plaintiff-Appellant,

v.

CITY OF CHICAGO, et al.,
Defendants-Appellees.

No. 81-2822.

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1982.

Decided Aug. 2, 1982.*

---

* This appeal was originally decided by an un-

published order on August 2, 1982 pursuant to

Mary Rita Luecke, Chicago, Ill., for plaintiff-appellant.

Jerome A. Siegan, Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, GIBSON,** Senior Circuit Judge, and CUDAHY, Circuit Judge.

Circuit Rule 35. The Court has subsequently decided to issue that decision as an opinion.

** The Honorable Floyd R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

CUMMINGS, Chief Judge.

On the morning of February 15, 1978, Mary Ann Tikalsky rushed, coatless, out of the Greater Grand Boulevard Mental Health Center, where she was employed as a city social worker, and began berating two Chicago policemen who were ticketing her car. Miss Tikalsky's wrath had been stirred by two circumstances: on the snowbound streets around her office parking of any kind—legal or illegal—was hard to find; and she thought the police department was exhibiting more zeal writing parking tickets than it had shown the week before investigating a robbery in which she had been the victim. Miss Tikalsky's outburst cost her dearly.

She was arrested for disorderly conduct and taken to the Second District Police Station at 51st Street and Wentworth Avenue. There a female detention aide subjected her to a visual strip search. First Miss Tikalsky had to bare her body from the waist up; then she had to lower her slacks and underwear, squat and bend from the waist several times, and alternately face toward and away from the matron. After the search Miss Tikalsky was kept in the women's detention center. Although she had money with her, she did not know that she could post bond. She remained in the detention area for four hours, until a friend arrived and paid the $35 bond. On March 3, 1978, Miss Tikalsky was tried and acquitted on the disorderly conduct charge.

These events generated a Section 1983 suit. Count I of the complaint as amended charged the arresting officers with false arrest and malicious prosecution; Count II charged one of the arresting officers with the use of excessive force and the other with failure to intervene; Count III charged the City of Chicago, the police chief, his subordinates, the watch commanders at the Wentworth Avenue station, the arresting officers, and the matron with equal protection, privacy, and Fourth Amendment violations based on the strip search. After a ten-day trial in December 1980, the jury awarded Miss Tikalsky damages of $30,000 against the City of Chicago

and Second District Watch Commander Norman Schmiedeknecht. The verdict was not broken down by counts and defendants, but the parties agree that it must have been based on the strip-search count. There is no telling which constitutional right the jury thought the strip search infringed.

The City and Norman Schmiedeknecht presented the following post-trial motion on January 8, 1982 (Tikalsky App. 9–10):

1. Defendants seek a judgment notwithstanding the verdict pursuant to Rule 50 of the Federal Rules of Civil Procedure for the following reasons:

 (a) As a matter of law the searching policy utilized in lockup facilities was constitutional. *Bell v. Wolfish*, [441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447] * * *.

 (b) When all the evidence is viewed in a light most favorable to the plaintiff, it still overwhelmingly favors these defendants and no other verdict than one in defendants' favor can stand.

2. In the alternative, defendants seek a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure for the following reasons:

 (a) The issue of the constitutionality of the searching policy utilized in the lockup facilities is a question of law and should not have been submitted to the jury.

3. In the alternative, the judgment against Norman Schmiedeknecht is illogical and erroneous with respect to the verdicts against the remaining individuals and a judgment notwithstanding the verdict should be entered.

In her January 26, 1981, memorandum in opposition to the defendants' motion, Miss Tikalsky met head-on the contention that *Bell v. Wolfish* put the City's strip-search policy beyond challenge. One of the cases she relied on was *People v. Seymour*, 80 Ill.App.3d 221, 35 Ill.Dec. 241, 398 N.E.2d 1191 (1st Dist. 1979) (henceforth *Seymour* I). However, in the two-week interval between the filing of her memorandum and the filing of the defendants' reply, the Illi-

nois Supreme Court reversed that case, 84 Ill.2d 24, 48 Ill.Dec. 548, 416 N.E.2d 1070 (February 3, 1981) (henceforth *Seymour* II). The defendants' reply memorandum placed great emphasis on the Illinois Supreme Court decision.

 On February 20, 1981, Judge Perry granted the City's motion for a new trial and entered a judgment n.o.v. in favor of Norman Schmiedeknecht.[1] The correctness of the judgment n.o.v. is not an issue in this appeal. In justification of his new-trial ruling, the district judge wrote:

> The court * * * finds * * * that a new trial for defendant City of Chicago should be granted on the basis that the jury was incorrectly informed by the court as to what the law was, and this fact might very well have contributed to the jury's finding against the City of Chicago. * * *
> The court gave to the jury certain instructions that might have confused the jurors,—particularly plaintiff's Instruction Number 41, which the court gave on the authority of *People v. Seymour*, 80 Ill.App.3d 221 [35 Ill.Dec. 241, 398 N.E.2d 1191] (1st Dist. 1979), which has since been reversed (on February 3, 1981) by a

unanimous Illinois Supreme Court save for Justice Simon, who did not participate in the consideration or decision of the case for the reason that he wrote, while on the lower court, the opinion that was reversed.[2]

Miss Tikalsky has appealed the district court's grant of a new trial on both substantive and procedural grounds.[3] She maintains that the district court abused its discretion in ordering a new trial based on error that was at most harmless.[4] She also contends that the district judge erred in granting the motion for reasons that were not apparent on its face, without affording her notice and a hearing before he did so.[5] Because we agree with the first contention, we need not reach the second. We reverse the grant of a new trial and remand to the district court with instructions to reinstate the jury verdict.

I

We begin with an examination of the *Seymour* cases, because they were central to the district judge's decision. Seymour was arrested for unlawful use of a weapon,

1. Because the verdict was a general one (see p. 177 *supra*), different standards applied to the two actions sought by defendants' motion. The judgment n.o.v. was proper only if none of the alternative theories of liability made out a case against Schmiedeknecht. The new trial order was proper if prejudicial error could be shown as to any of the theories. See *King v. Ford Motor Co.*, 597 F.2d 436, 439 (5th Cir. 1979), cited in 5A Moore's Federal Practice ¶ 49.02 (1982 pocket part).

2. The district judge found a symptom of confusion in the acquittal of police officer Pepper who made the arrest that led to the strip search. On the contrary, the arresting officer had no actual involvement with or supervisory responsibility for the strip search. His acquittal seems indicative of jury acumen rather than jury confusion.

3. An order granting a new trial is not ordinarily appealable. 6A Moore's Federal Practice ¶ 59.-15[1] at 59–275 (1982). Accordingly Miss Tikalsky first sought a writ of mandamus directing the district judge to restore the judgment in her favor. Subsequently she sought and obtained a certification from the district judge under 28 U.S.C. § 1292(b) and we accepted the appeal.

4. Rule 61 of the Federal Rules of Civil Procedure provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

5. She relies on Rule 59(d) of the Federal Rules of Civil Procedure, which provides in part: "After giving the parties notice and an opportunity to be heard on the matter, the court may grant a motion for a new trial, timely served, for a reason not stated in the motion." She argues that the *Seymour* issue, which was raised only in the defendants' last memorandum, to which she could not respond, amounts to "a reason not stated in the motion."

a bondable misdemeanor in Illinois. He was indicted, however, for possession of cocaine. The issue was whether the cocaine had to be suppressed because it had been discovered during an improper strip search. The trial court granted Seymour's motion to suppress; the appellate court affirmed; and the Supreme Court reversed.

The appellate court reasoned that misdemeanor arrestees, like Seymour, must be informed orally of their right to post bond. 80 Ill.App.3d at 228, 35 Ill.Dec. 241, 398 N.E.2d 1191. If Seymour could post bond, there was no need to put him into a lockup. He could be detained in less restrictive quarters while the police completed their investigation. *Id.* at 229, 35 Ill.Dec. 241, 398 N.E.2d 1191. Since the search was the result of police failure to tell Seymour that he could post bond, the cocaine it revealed was properly suppressed. *Id.* An independent basis for invalidating the search was that it was unreasonable under Article I, Section 6 of the Illinois Constitution:[6] "when the defendant is charged only with a misdemeanor and may gain his release immediately, his modesty and privacy must be made inviolate." *Id.* at 230, 35 Ill.Dec. 241, 398 N.E.2d 1191.

■ The Illinois Supreme Court rejected *Seymour* I's *per se* rule. There is no statutory requirement that misdemeanor arrestees be informed orally that they may post bond—written notification is enough. 84 Ill.2d at 31, 48 Ill.Dec. 548, 416 N.E.2d 1070. On the facts of the case, Seymour could properly be detained for a considerable time while the police investigated his previous felony conviction, an event which might upgrade the weapons offense for which he was arrested from a misdemeanor to a Class 3 felony. *Id.* at 32, 48 Ill.Dec. 548, 416

N.E.2d 1070. During the detention, Seymour could be placed in the lockup; hence he could also be strip-searched for security reasons. *Id.* at 38–39, 48 Ill.Dec. 548, 416 N.E.2d 1070. Moreover, he could also have been searched as an incident of his arrest, and under the circumstances the search incident to arrest could have been a strip search. *Id.* at 38, 40–41, 48 Ill.Dec. 548, 416 N.E.2d 1070.[7]

It is apparent that *Seymour* II precludes reliance on the rule of *Seymour* I—*i.e.*, that a strip search is *per se* unreasonable unless a misdemeanor arrestee has been told that he can post bond and fails to do so. It is also apparent that *Seymour* II does not authorize strip searches in all circumstances.

## II

■ We review the district judge's grant of a new trial here only for abuse of discretion. *Hahn v. Becker*, 588 F.2d 768, 771 (7th Cir. 1979). But Rule 61 of the Federal Rules of Civil Procedure (quoted in note 4 *supra*) sets some boundaries on that discretion by requiring that the error or defect upon which the grant of new trial is based be such that it "affect[s] the substantial rights of the parties." Cf. *Juneau Square Corp. v. First Wisconsin National Bank*, 624 F.2d 798, 807 (7th Cir. 1980), certiorari denied, 449 U.S. 1013, 101 S.Ct. 571, 66 L.Ed.2d 472.

■ The question then is whether the district judge exceeded his discretion in deciding that the *per se* rule of *Seymour* I played a sufficiently important role in the trial of Miss Tikalsky's suit to warrant starting over again. Although Judge Perry was understandably nonplussed at the news

---

**6.** Article I, Section 6 states: "The people shall have the right to be secure in their persons * * against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." The *Seymour* I court specifically did not reach Seymour's federal constitutional grounds. 80 Ill.App.3d at 231, 35 Ill.Dec. 241, 398 N.E.2d 1191.

**7.** The *Seymour* II court took pains to limit its holding to the circumstances of Seymour's search. "[W]e here acknowledge that a strip search may be entirely unreasonable and a violation of constitutional rights when conducted incident to custodial arrests in certain situations. We are here saying only that the arrest in this case was not one of those situations." *Id.* 84 Ill.2d at 38, 48 Ill.Dec. 548, 416 N.E.2d 1070; cf. 40–41, 48 Ill.Dec. 548, 416 N.E.2d 1070.

that the case had been reversed, a review of the record convinces us that he overestimated its importance.

It appears that Miss Tikalsky's lawyers adverted to *Seymour* I four times, never in the presence of the jury.[8]

(1) It was cited in the plaintiff's pretrial memorandum. Tr. 36.

(2) It was mentioned as one of several reasons that a 1965 photograph of contraband obtained from strip searches of female arrestees should not be admitted in evidence. The proffer of the photograph, the colloquy about its evidentiary value, and the judge's decision to admit it all took place out of the jury's presence. Tr. 32–38.

(3) *Seymour* I was summarized in the plaintiff's memorandum in opposition to the defendants' post-trial motion. The jury had been discharged by this time.

(4) *Seymour* I was cited as plaintiff's authority for Instruction Number 41, the partial text of which was read to the jury. The jury did not have access to copies of the instructions and their supporting authority during its deliberations.

Of these four instances, only the instruction could have had any influence on the jury. We therefore examine it in more detail.

Plaintiff's proposed Instruction Number 41 read as follows:

By Illinois Supreme Court rule, bond for the municipal offense of disorderly conduct is $35.00. Police officers are required to inform arrestees who have been charged with bondable offenses of their right to post bail and be released. Police officers can detain arrestees a reasonable time to complete their investigation and to fill out their arrest reports [; but during this reasonable detention police cannot incarcerate the arrestee. Because

there is no justification for taking the arrestee into the lock-up, there is no need to search for contraband].

The court did not give the instruction as proposed, however. The bracketed language, which is derived directly from the reversed holding of *Seymour* I, was refused. The remainder of the instruction is not inconsistent with *Seymour* II—provided the word "inform" is not limited to oral advice but includes conveying information by written notice or poster. Thus the instruction as given does not misstate the applicable law, although it gives the jury virtually no guidance on the search issue.

■ Even if Instruction Number 41 were clearly wrong, the district judge's inquiry (and ours as a reviewing court) would not be at an end.

Alleged errors in jury instructions are considered in the light, not only of the instructions as a whole, but of the allegations of the complaint, the opening statement, the evidence, and the closing arguments. *Beard v. Mitchell*, 604 F.2d 485, 497–98 (7th Cir. 1979); *Musgrave v. Union Carbide Corp.*, 493 F.2d 224, 231 (7th Cir. 1974) * * *. We consider all that the jury heard and * * * decide "not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1100 (5th Cir. 1973) (Wisdom, J.), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 * * *.

*Alloy International Co. v. Hoover-NSK Bearing Company, Inc.*, 635 F.2d 1222, 1226–1227 (7th Cir. 1980)

Under that standard, the jury verdict must be reinstated. The complaint did not mention the bondable nature of Miss Tikalsky's

---

8. The record on appeal contains only one volume of transcript of in-court proceedings (examination of Ms. Smolinski, a police matron). This Court issued a *sua sponte* order requesting that any other transcripts be transmitted to us, but we are informed that no others were prepared. At oral argument, however, counsel for

Miss Tikalsky represented that she never argued to the jury that the *per se* rule of *Seymour* I had direct application to this case. Counsel for the City did not contradict this assertion at oral argument or in his brief, and we accept it as true.

offense or the impropriety of putting her in the lockup. It merely alleged (amended Count III, ¶¶ 32 and 33) that the strip search was not justified on any of the traditional grounds—suspicion of concealed weapons or contraband, fear that Miss Tikalsky might escape, or fear that she might harm herself, the police, or others in the police station. The City put on extensive evidence to demonstrate the need to strip search all female arrestees—including all misdemeanants—none of which was excluded in reliance on *Seymour* I. Finally, the 82 instructions that were read to the jury did not allude to the *Seymour* I theory. Instead they presented a comprehensive and correct statement of the law the jury had to be guided by in considering the strip-search claim. For example, the jury should consider the charge as a whole, and not single out any one instruction (Pl. 1 & 4). Search incident to arrest does not require a warrant but cannot be unreasonable (Pl. 36). Reasonableness standards are applicable to all searches without a warrant, including searches incident to traffic arrests and to arrests for bondable misdemeanors (*id.*). In evaluating the equal protection claim, the jury should consider the City's interest in lockup security (Def. 25 & 26). A visual strip search is not necessarily violative of the constitutional rights of a detainee (Def. 29). Less than probable cause would justify such a search (Def. 30). The test of reasonableness requires a balancing of the "significant and legitimate security interests of the City against the private interest of the plaintiff" (Def. 26). Against this background, the fact that Instruction Number 41 originally contained *Seymour* I language, which was stricken before the instruction was read to the jury, pales into insignificance.[9]

But for the fortuitous timing of *Seymour* II, the City's post-trial motion would have been summarily—and properly—denied. Its main contentions are essentially frivolous. This is certainly not a case to be reversed for insufficient evidence, *i.e.*, because no rational jury could have found plaintiff's case proved by a preponderance of the evidence. Nor is *Bell v. Wolfish* the panacea the City claims.[10] If the balancing test prescribed in *Wolfish*[11] were as predestined in outcome as the City contends, a

9. As Miss Tikalsky has pointed out, "it would be a terrible irony * * * if the District Court were allowed to strike the language of an instruction which relied on the supporting authority, and then grant a new trial because the supporting authority on which the stricken language was based was reversed" (Reply Br. 3).

10. Note, too, that the City's theory of the rule of *Bell v. Wolfish* in paragraph 1(a) of its post-trial motion (*supra*, pp. 177–178) differs markedly from the theory espoused in its own Instruction Number 26 which was given and provides as follows:

The test of reasonableness of a search under the 14th Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.

Thus if after balancing the significant and legitimate security interests of the City against the private interest of the plaintiff, you determine that the searching policy of which the plaintiff complains is rationally relative to the said security interests of the Lockup facility, then you must find this search to be reasonable and not in violation of plaintiff's constitutional rights.

*Bell v. Wolfish*, 441 U.S. 520, 559–560, 99 S.Ct. 1861, 1884–1885, 60 L.Ed.2d 447, 481–482

This Instruction correctly analyzes *Wolfish*: the case did not validate strip searches *per se* as claimed in the City's motion.

11. "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." 441 U.S. at 559, 99 S.Ct. at 1884. In *Wolfish*, the Court applied the test to find no constitutional violation in visual body-cavity searches of federal pretrial detainees in New York City's Metropolitan Correctional Center. It is noteworthy that "[u]nder the Bail Reform Act, 18 U.S.C. § 3146, a person in the federal system is committed to a detention facility only because no other less drastic means can reasonably ensure his presence at trial." *Id.* at 524, 99 S.Ct. at 1866.

number of post-*Wolfish* cases would have been wrongly decided.[12]

Finding that the jury verdict against the City of Chicago ought not to have been disturbed, we remand to the district court with directions that the verdict and the award be reinstated. Costs to appellant.

**12.** *E.g., Logan v. Shealy*, 660 F.2d 1007 (4th Cir. 1981), certiorari denied, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (visual strip search of woman charged with driving while intoxicated "conclusively shown to be unconstitutional under the standards laid out in *Bell v. Wolfish* * * *," 660 F.2d at 1013); *Tinetti v. Wittke*, 620 F.2d 160 (7th Cir. 1980) (unconstitutional to conduct visual strip searches of people arrested for non-misdemeanor traffic offenses).

Cf. *Does v. City of Chicago*, No. 79 C 789 (N.D.Ill., January 12, 1982) (summary judgment in bifurcated proceedings that Chicago's policy of visually strip searching all female arrestees is unconstitutional: it is "unreasonable" in Fourth Amendment terms and it violates the Equal Protection Clause). The City of Chicago has chosen not to appeal the *Does* decision (Tikalsky Reply Br. 7–8).