THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KEN-
NETH McKINNEY, Defendant-Appellee.

Fifth District   No. 5—94—0344

Opinion filed September 12, 1995.

Gary Duncan, State's Attorney, of Mt. Vernon (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, and Corinne M. Davis-Corr, of counsel), for the People.

Daniel M. Kirwan and Robert S. Burke, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Kenneth McKinney, was charged with aggravated battery and unlawful possession of more than 1 gram but less than 15 grams of a substance containing cocaine with the intent to deliver on school grounds. Defendant filed a motion to suppress, and on April 28, 1994, a hearing on the motion was held. The trial court granted defendant's motion. The State appeals, arguing that the trial court's assessment of the evidence was manifestly erroneous. We agree and reverse and remand.

I

On January 5, 1994, defendant, an 18-year-old student in a behavioral disorder class at Mt. Vernon High School, arrived at teacher Jan Greene's class upset and refusing to remove his jacket pursuant to school rules for all level four students. Greene testified that defendant wanted to confront a classmate who allegedly called defendant a racial slur. When defendant approached the student, Greene attempted to intervene by blocking defendant's way. To get Greene out of his way, defendant picked Greene up and tossed her aside. Greene fell to the floor. Defendant continued to approach the student, removing his jacket and placing it on a chair. Greene, prompted by her concern that defendant might have a weapon in the jacket, slid the chair with the jacket on it into an adjoining closet-type room and locked the door. Because defendant continued to be aggressive toward Greene, the police were summoned to the school. Officers Kenneth McElroy and Chris Mendenall responded to the call.

Upon arriving at the school, the officers interviewed Greene

regarding the altercation. Greene recounted to the officers the facts surrounding the incident. Defendant remained somewhat excited, so the officers decided to conduct a pat-down and handcuff him. Determining that there was probable cause to arrest defendant for aggravated battery, the officers placed defendant under arrest. Because it was cold outside, Officer McElroy inquired whether defendant had any belongings to take with him to the station. Instead of answering McElroy, defendant turned to another student and instructed the student to make sure defendant's cousin got his coat. McElroy informed defendant that the coat would have to accompany defendant to the station. Greene communicated to the officers her belief that the jacket may contain a weapon. Greene retrieved the jacket from the locked room and gave it to Officer Mendenall.

Defendant was escorted to McElroy's squad car and transported to the police station. Mendenall took the jacket and escorted defendant's girlfriend to the squad car. The girlfriend was arrested for disorderly conduct when she began to verbally attack Greene upon defendant's arrest. Mendenall placed the jacket beside him on the front seat of the squad car and transported defendant's girlfriend to the police station.

At the station, Mendenall gave the jacket to McElroy, who conducted an inventory search pursuant to police department policy. During the inventory search, McElroy discovered three bags of cannabis, one white rock-like substance, and a bottle containing about six white rock-like substances which he believed to be crack cocaine. The contraband appeared to be packaged for sale. Mendenall conducted a field test on the white rock substances, which tested positive for cocaine. No weapon was found.

On January 7, 1994, a two-count information was filed against defendant. Count I charged defendant with aggravated battery in violation of section 12—4(b)(3) of the Criminal Code of 1961 (the Code) (720 ILCS 5/12—4(b)(3) (West 1992)). In count II, defendant was charged with unlawful possession of a controlled substance (more than 1 gram but less than 15 grams of a substance containing cocaine) with the intent to deliver on school grounds in violation of section 401 of the Illinois Controlled Substances Act (the Act) (720 ILCS 570/401(c)(2) (West 1992)) and section 407(b)(1) of the Act (720 ILCS 570/407(b)(1) (West 1992)).

On March 25, 1994, defendant filed a motion to suppress evidence. Defendant's motion alleges that defendant's person and jacket were searched by Mt. Vernon city police officer Kenneth McElroy and that the search was not pursuant to a search warrant; that the officer unlawfully seized a plastic bag containing cannabis and a

bottle containing six rocks, white in color, and $12 from defendant's jacket pocket; that upon arrest McElroy asked defendant if he had a coat or any other belongings he needed to take with him and that defendant stated he wanted his coat to be given to his cousin; that the teacher gave the coat to McElroy; that the illegal search was conducted without defendant's permission or probable cause; and that the search and seizure were not incident to an inventory search and therefore the search and seizure were in violation of defendant's constitutional rights.

A hearing on defendant's motion to suppress was held on April 28, 1994. Defendant testified that because he was on level four in his behavior class, school rules required him to remove his coat upon arriving at school for storage in a locked room. Defendant also stated that he knew that only students in the higher levels are permitted to keep their coats with them on the back of their chairs. Defendant testified that when he was arrested, he asked Greene and the officer to give the jacket to his cousin to make sure the jacket got to his home. Defendant further testified that he did not wear the jacket to the police station and that no one asked him for permission to search his jacket. Lastly, defendant stated that his jacket was not returned to him after he arrived at the station.

Greene testified on behalf of the State. Defendant is a student in Greene's class, and Greene has direct contact with defendant. Greene testified that defendant was in a behavior class and that he was on level four, the lowest level. Greene explained that students were placed on level four if they physically threatened staff and were consistently noncompliant. According to Greene, defendant was placed on level four because after Christmas he became "physically threatening, encouraging other students to—to have problems with staff, as well as saying how easy it is to get a weapon, how easy it is to cause trouble to staff, damage to staff people that gave him trouble." Greene stated that on the day of the incident, she was concerned that defendant might have something in his jacket that he could use against the other students or a staff member. Greene's concern was premised upon the nature and frequency of defendant's statements regarding the easy accessibility of weapons and harm to staff members that "gave him trouble." Consequently, when defendant took his jacket off, Greene confiscated it and locked the jacket in the closet. Once the police arrived, Greene testified that she informed the officers of her concern regarding the possibility of a weapon in defendant's jacket.

Officers McElroy and Mendenall testified regarding defendant's arrest and the search of his jacket at the police station. McElroy

testified that he conducted an inventory search pursuant to Mt. Vernon police department policy. The court asked McElroy why defendant's coat was not searched at the time it was handed over to the police. McElroy stated that he was not concerned that the gun might accidentally discharge but rather he was concerned about the effect of the continuing disruption on the class. On redirect examination, he stated that the remaining students were not doing school work and that the classroom's emotional atmosphere was highly charged. Defendant's girlfriend began to verbally attack Greene, and defendant was excited. Therefore, McElroy felt that once probable cause for arrest had been established, the arrest should be made and they should leave the classroom as quickly as possible. McElroy felt that a search of defendant's jacket could be conducted at the police station since defendant did not have access to the jacket.

Following the testimony and closing arguments, the trial court granted defendant's motion to suppress evidence. The court found that the police search of defendant's jacket was not a search incident to arrest because the jacket had been locked in a closet at the time of defendant's arrest. The court stated that because the jacket was seized against defendant's express wishes, the inventory search conducted at the police station was invalid. Concluding that the search was conducted without a warrant, without defendant's consent, and in the absence of exigent circumstances, the court ruled that the State could not use the evidence obtained from the unlawful search of defendant's jacket. The State appeals.

## II

The State contends that the trial court's suppression of the evidence obtained during an inventory search of defendant's jacket was manifestly erroneous because the teacher properly confiscated defendant's jacket, which she reasonably believed contained a weapon, and properly gave defendant's jacket to the police upon defendant's arrest for aggravated battery. We agree.

The Supreme Court in *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 83 L. Ed. 2d 720, 105 S. Ct. 733, addressed the legality of searches of students by teachers and school officials. In *T.L.O.*, a teacher discovered T.L.O., a 14-year-old high school freshman, smoking in the lavatory in violation of a school rule. T.L.O. was taken to the principal's office, where the assistant vice-principal questioned T.L.O. T.L.O. denied that she had been smoking in the lavatory and claimed that she did not smoke at all. The school official demanded to see T.L.O.'s purse. Upon opening the purse, he found cigarettes as well as a package of cigarette rolling papers associated with marijuana

use. A further search revealed a small amount of marijuana, a pipe, a number of empty plastic bags, a substantial quantity of money in one-dollar bills, and a list of names that appeared to be students who owed T.L.O. money. Additionally, two letters implicating T.L.O. in marijuana dealing were found. The school official notified T.L.O.'s mother and the police and turned the evidence obtained from T.L.O.'s purse over to the police. At police headquarters, T.L.O. subsequently confessed to selling marijuana at the school.

Applying a "reasonable suspicion" standard, the trial court concluded that the school official's search was reasonable and was justified by the school official's well-founded suspicion that T.L.O. had violated a school rule. On appeal, a divided appellate court affirmed the trial court's finding of no fourth amendment violation. T.L.O. appealed the fourth amendment ruling to the supreme court of New Jersey, which reversed the appellate court and ordered the evidence found in T.L.O.'s purse suppressed, reasoning that the contents of the purse had no bearing on the accusation that T.L.O. was smoking in the school lavatory.

■ The Supreme Court granted *certiorari* to address the question of "what limits, if any, the Fourth Amendment places on the activities of school authorities." (*T.L.O.*, 469 U.S. at 332, 83 L. Ed. 2d at 728, 105 S. Ct. at 737.) In reconciling the privacy interests of school children with the school's need to maintain order, the Court held that teachers and school authorities do not need a warrant before searching a student and are not required to adhere to the requirement that searches be based on probable cause. "Rather, the legality of a search of a student should simply depend on the reasonableness, under all the circumstances of the search." (*T.L.O.*, 469 U.S. at 341, 83 L. Ed. 2d at 734, 105 S. Ct. at 742.) To determine the reasonableness of a search, the Court set forth a two-prong test:

> "[F]irst, one must consider 'whether the ... action was justified at its inception,' *Terry v. Ohio* [(1968), 392 U.S. 1, 20, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879]; second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place,' *ibid.* Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the

nature of the infraction." *T.L.O.*, 469 U.S. at 341-42, 83 L. Ed. 2d at 734-35, 105 S. Ct. at 742-43.

The Court, applying this test to the facts, found that the school official's suspicion that T.L.O. had cigarettes in her purse was reasonable given the teacher's report that T.L.O. was smoking in the lavatory. Furthermore, the Court stated that it was reasonable for the school official to suspect that T.L.O. was carrying cigarettes with her and that her purse was the obvious place in which to find them. The Court characterized the school official's suspicion that T.L.O.'s purse contained cigarettes as the "sort of 'common-sense conclusio[n] about human behavior' upon which 'practical people'—including government officials—are entitled to rely," rather than "an 'inchoate and unparticularized suspicion or "hunch" ***.' " (*T.L.O.*, 469 U.S. at 346, 83 L. Ed. 2d at 737, 105 S. Ct. at 745, quoting *United States v. Cortez* (1981), 449 U.S. 411, 418, 66 L. Ed. 2d 621, 629, 101 S. Ct. 690, 695, and *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.) The Court pointed out that "the requirement of reasonable suspicion is not a requirement of absolute certainty: 'sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment ....' " (*T.L.O.*, 469 U.S. at 346, 83 L. Ed. 2d at 737, 105 S. Ct. at 745, quoting *Hill v. California* (1971), 401 U.S. 797, 804, 28 L. Ed. 2d 484, 490, 91 S. Ct. 1106, 1111.) With respect to the scope of the search, the Court stated that the discovery of rolling papers gave rise to the school official's suspicion that T.L.O. was carrying marijuana, thereby justifying a further search of T.L.O.'s purse. Accordingly, the Court concluded that the extension of the search to a separate zippered compartment of T.L.O.'s purse, containing evidence of marijuana dealing, was reasonable.

■ In the case at bar, defendant was a student in a behavioral disorder class at the high school. Defendant was on level four, the lowest level. The students are placed on various levels depending upon the behavior exhibited at school. From the record it appears that at each level the students are accorded certain privileges, such as being allowed to keep their coats with them during class. At defendant's level, students are not permitted to keep their coats with them during class. Instead, coats and jackets are removed upon arrival at school and kept in a locked room.

Jan Greene, defendant's teacher, testified that defendant was placed on level four because since Christmas, defendant had become physically threatening and began saying how easy it is to get a weapon and to create problems for the staff and to "damage staff people that gave him trouble." Additionally, defendant encouraged other students to cause difficulties for the staff.

On the day of the incident in question, defendant arrived at Greene's class upset and refused to remove his coat. Greene testified that defendant intended to confront a classmate who allegedly referred to defendant using a racial slur. As defendant approached the student, Greene tried to intervene by blocking defendant's access to the student. Defendant, determined to reach the student, picked Greene up and tossed her aside. Greene fell to the floor. As he proceeded toward the student, defendant removed his jacket, placing it on the back of a chair. Greene stated that she confiscated defendant's jacket and locked it in the adjoining room because of her concern that defendant might "have something in the coat that he could use either on one of the staff members or on one of the kids." Greene's reasonable suspicion derived from direct knowledge of defendant's recent increasingly disruptive behavior, his previous comments regarding weapons and damage to staff, his physical aggression towards Greene, and defendant's intent to continue the confrontation with the other student despite Greene's efforts to diffuse the situation. Greene's actions in seizing the jacket and locking it away until the police arrived was "justified at its inception" because Greene had a well-founded belief that defendant had violated a school rule in refusing to relinquish his jacket upon arriving at class and a reasonable suspicion that defendant was in violation of the law in possessing a weapon on school grounds (720 ILCS 5/24—1 (West 1992)).

In light of the circumstances presented here, Greene had sufficient reason to believe that defendant might have a weapon in his possession which he might be inclined to use. With emotions running high and the need to safeguard the well-being of the students, coupled with the need to maintain order in the classroom, Greene's seizure of defendant's jacket was not unreasonable. Even though defendant did not ultimately have a weapon in his jacket, Greene's suspicions still were sufficient to satisfy the reasonable suspicion requirement because absolute certainty is not required, but rather "sufficient probability." While Greene did not search defendant's jacket for weapons, such a search would have been reasonably related to these circumstances.

We note that the summoning of police officers to the school during the altercation does not suggest that a standard other than reasonable suspicion is required where the search or seizure is conducted by school officials not acting at the behest of law enforcement. Accordingly, based on the totality of the circumstances, we conclude that Greene's seizure of defendant's jacket was reasonable and that she properly turned the jacket over to the police.

## III

We now turn our attention to the trial court's suppression of the evidence derived from the search of defendant's jacket at the police station. The trial court found that the officer's search of defendant's jacket was not pursuant to defendant's arrest since the jacket was locked in a closet at the time of the arrest and was not within defendant's reach or control; and that the police did not have probable cause to believe that defendant's jacket contained either weapons, contraband, or evidence of the offense for which defendant was arrested. The trial court further found that no exigent circumstances existed at the high school requiring the police to seize defendant's jacket, that the police officer's seizure of defendant's jacket was against the expressed wishes of defendant, and that, thus, there was no justification for an inventory search. We disagree with the trial court for the reasons set out below.

■ In moving to suppress evidence, the burden of proving that the search and seizure were unlawful rests with the defendant. (*People v. Hoskins* (1984), 101 Ill. 2d 209, 212, 461 N.E.2d 941, 941-42.) A trial court's determination on a motion to suppress evidence will not be disturbed unless it is manifestly erroneous. *Hoskins*, 101 Ill. 2d at 212, 461 N.E.2d at 942.

The right to conduct a warrantless search incident to a lawful arrest is a well-established exception to the warrant requirement. (*United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476; *United States v. Edwards* (1974), 415 U.S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234; *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467; *People v. Hoskins* (1984), 101 Ill. 2d 209, 461 N.E.2d 941; *People v. Seymour* (1981), 84 Ill. 2d 24, 416 N.E.2d 1070; *People v. Mannozzi* (1994), 260 Ill. App. 3d 199, 632 N.E.2d 627; *People v. Perry* (1990), 204 Ill. App. 3d 782, 562 N.E.2d 618.) In *United States v. Robinson,* the Supreme Court discussed the authority to search incident to arrest, stating:

> "It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Robinson*, 414 U.S. at 235, 38 L. Ed. 2d at 441, 94 S. Ct. at 477.

■ Section 108—1 of the Code of Criminal Procedure of 1963 provides the circumstances under which a police officer may conduct a search incident to a lawful arrest. (725 ILCS 5/108—1 (West 1992).) The provision states:

> "§ 108.1. Search without warrant. (1) When a lawful arrest is ef-

fected a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of:

    (a) Protecting the officer from attack; or

    (b) Preventing the person from escaping; or

    (c) Discovering the fruits of the crime; or

    (d) Discovering any instruments, articles, or things which may have been used in the commission of, or which may constitute evidence of, an offense.

    (2) No motor vehicle, or driver or passenger of such vehicle, shall be stopped or searched by any law enforcement officer solely on the basis of a violation or suspected violation of Section 12—603.1 of The Illinois Vehicle Code [(625 ILCS 5/12—603.1 (West 1992))]." 725 ILCS 5/108—1 (West 1992).

Police officers have broad statutory authority to conduct a search once they have effected a lawful arrest. Further, "[i]t is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." (*United States v. Edwards*, 415 U.S. at 803, 39 L. Ed. 2d at 775, 94 S. Ct. at 1237.) Accordingly, a search incident to arrest may be properly conducted at the police station rather than at the place of arrest without necessarily rendering the search invalid. *Mannozzi*, 260 Ill. App. 3d at 205, 632 N.E.2d at 633; *Seymour*, 84 Ill. 2d at 33.

◼ Officer McElroy testified that after interviewing Jan Greene, he and Officer Mendenall determined that they had grounds to arrest defendant for aggravated battery. Greene, having confiscated defendant's jacket believing it to contain a weapon, handed the jacket over to Officer Mendenall. Greene communicated to the officers her belief that the jacket might contain a weapon. The officers decided not to search the jacket for weapons at the school because defendant did not have access to the jacket and because the incident had disrupted the class and created an emotionally charged atmosphere.

The officers, defendant, and defendant's girlfriend, who was arrested for disorderly conduct, left the school for the police station. Defendant was transported to the station in Officer McElroy's squad car. Officer Mendenall placed defendant's jacket in the front seat of his squad car and transported defendant's girlfriend and the jacket to the police station.

Upon arriving at the station house, Officer Mendenall gave defendant's jacket directly to Officer McElroy, who conducted the search. In the course of searching the jacket, Officer McElroy found bags of cannabis and several white rock-type substances he believed

to be crack cocaine. Officer Mendenall conducted a field test on the substance, which tested positive for cocaine.

Contrary to the trial court, we believe that, based on the facts presented here, the search is properly characterized as incident to arrest. Therefore, we conclude that the officers, having lawfully arrested defendant, properly conducted a search of defendant's jacket incident to arrest while he was detained at the police station. Accordingly, we find that the trial court's order suppressing the evidence obtained from the search of defendant's jacket is manifestly erroneous.

For the foregoing reasons, the judgment of the circuit court of Jefferson County is reversed and the cause is remanded.

Reversed and remanded.

WELCH and HOPKINS, JJ., concur.