**MATHERS FUND, INC.,**
**Plaintiff-Appellant,**

v.

**The COLWELL COMPANY,**
**Defendant-Appellee.**

**No. 76–2069.**

United States Court of Appeals, Seventh Circuit.

Argued May 23, 1977.

Decided Nov. 4, 1977.

Robert A. Downing, Chicago, Ill., for plaintiff-appellant.

Sheldon M. Jaffe, Los Angeles, Cal., Arthur T. Susman, Chicago, Ill., for defendant-appellee.

Before CASTLE and WOOD, Circuit Judges, and MARKEY, Chief Judge.[1]

MARKEY, Chief Judge.

Appeal by plaintiff, Mathers Fund, Inc. (Fund) from an August 2, 1976 district court order dismissing Fund's complaint for failure to state a claim upon which relief can be granted. The complaint sought rescission of a stock sale on the ground that the purchaser was an "affiliated person." We affirm.

## Background

On November 24, 1974, The Colwell Company (Colwell), a publicly held corporation engaged in the mortgage finance business, agreed to purchase 158,200 shares of its common stock from Fund, an open-end investment company registered under the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 to 80a–52 (the Act). The transaction was consummated on November 29, 1974, when Colwell paid Fund $395,700 (approximately $2.50 per share) and took delivery of the stock, which then constituted more than 5 per cent of Colwell's voting securities outstanding.

On July 16, 1975, Fund tendered the purchase price to Colwell and demanded return of the stock. Colwell refused, whereupon Fund instituted the present action seeking rescission of the November 29, 1974 sale and such other relief[2] as would place it in the position it would have occupied had that sale not occurred. Jurisdiction was based on § 44 of the Act and on diversity of citizenship, 28 U.S.C. § 1332.

The complaint alleged that Fund's ownership of more than 5 per cent of Colwell's outstanding voting securities made Colwell an "affiliated person," as defined in the Act, § 2(a)(3),[3] and that Colwell's November 29, 1974 purchase of its own shares violated § 17(a)(2),[4] which prohibits an affiliated person from knowingly purchasing any security from a registered investment company.

Fund based its claim for rescission on § 47(b), which section declares void every contract violating any provision of the Act. The district court, citing the Supreme Court's interpretation of that declaration as rendering a contract voidable by an innocent party in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), concluded that Fund was not innocent, that the parties were *in pari delicto*, and that Fund was not entitled to relief under section 47(b) of the Act. The district court felt it proper in such situations to leave the parties where they stood. Accordingly, Colwell's motion under Fed.R. Civ.P. 12(b)(6) was granted.

Fund's motion for reconsideration was denied on September 27, 1976.

---

1. Chief Judge, U.S. Court of Customs and Patent Appeals, sitting by designation.

2. Fund also requested an order that Colwell pay (1) any excess of the shares' market value on the date of demand over that on the date of return; (2) the cost of registering the stock under the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa; (3) for copies of a prospectus so that Fund may offer the shares to the public; (4) the fair market value of any shares nonreturnable because of Fund's policy forbidding purchase of over 10 per cent of a company's voting securities; (5) the cost of obtaining exemptions from Fund's policies; and (6) Fund's costs, attorney fees, and other expenses in this action.

3. 15 U.S.C. § 80a–2(a)(3), in pertinent part, provides:

(a) When used in this subchapter, unless the context otherwise requires—

.      .      .      .      .

(3) "Affiliated person" of another means .    .    . (B) any person 5 per centum or more of whose outstanding voting securities are directly or indirectly owned, controlled or held with power to vote, by such other person .    .    . .

4. 15 U.S.C. § 80a–17(a)(2), in pertinent part, provides:

(a) It shall be unlawful for any affiliated person .    .    . of .    .    . a registered investment company .    .    .

(2) knowingly to purchase from such registered company .    .    . any security or other property (except securities of which the seller is the issuer) .    .    . .

## Issue

The dispositive issue is whether the district court erred in holding, solely on the basis of the complaint, that Fund is not entitled to rescission under § 47(b).

## Opinion

Under the Federal Rules of Civil Procedure, it is well established that, on a motion to dismiss, a complaint must be construed in the light most favorable to the plaintiff, the allegations thereof being taken as true; and, if it appears reasonably conceivable that at trial the plaintiff can establish a set of facts entitling him to some relief, the complaint should *not* be dismissed. *Jung v. K. & D. Mining Co.,* 260 F.2d 607, 608 (7th Cir. 1958).

Fund contends that its complaint sets forth a prima facie cause of action, entitling it to a trial and to the relief sought.[5]

■ Section 47(b) of the Act contemplates civil suits for relief by way of rescission and for damages. Cf. *Eastside Church of Christ v. National Plan, Inc.,* 391 F.2d 357 (5th Cir.) *cert. denied,* 393 U.S. 913, 89 S.Ct. 234, 21 L.Ed.2d 198 (1968) (Securities Exchange Act of 1934), *Goldstein v. Groesbeck,* 142 F.2d 422 (2nd Cir.), *cert. denied,* 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590 (1944) (Public Utility Holding Company Act of 1935). Relief must, however, be fashioned to comport with, and further the policies of, the overall legislative scheme of which the voidability provision, § 47(b), is a part.

The legislative history of the Act evinces congressional concern over transactions between "insiders," e. g., officers or directors, and their associated investment companies. The legislative focus was upon those transactions which present "opportunities for gross abuse by unscrupulous persons, through unloading of securities upon the

companies, unfair purchases from the companies, the obtaining of unsecured or inadequately secured loans from the companies, etc." S.Rep.No. 1775, 76th Cong., 3d Sess. 7 (1940).

■ That the Act was intended to protect against self-dealing is further evident from the declaration of policy set forth in § 1, which, in relevant part, provides:

[I]t is declared that the national public interest and the interest of investors are adversely affected—

. . . . .

(2) when investment companies are organized, operated, managed, or their portfolio securities are selected, in the interest of directors, officers, investment advisers, depositors, or other affiliated persons thereof, in the interest of underwriters, brokers, or dealers, in the interest of special classes of their security holders, or in the interest of other investment companies or persons engaged in other lines of business, rather than in the interest of all classes of such companies' security holders . . . .

The prophylactic nature of the Act is further reflected in § 17(b)(1)–(3), authorizing the Securities & Exchange Commission (S.E.C.) to exempt a transaction otherwise violative of § 17(a) if, *inter alia,* the terms thereof are reasonable and fair and no *overreaching* is involved.

■ The present complaint itself demonstrates that Fund has failed to state a claim for rescission on which relief may be granted. The complaint alleges no overreaching whatever on Colwell's part. On the contrary, an exhibit attached to the complaint refers to correspondence between Fund and the S.E.C., wherein Fund stated that the price paid by Colwell was fair and reasona-

---

5. Fund also contends that the order is unsustainable because it is based on the premise that the parties are *"in pari delicto."* It is settled, however, that a correct decision must be affirmed notwithstanding a wrong reason given below. *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937), and cases cited therein; *Dann v. Studebaker-Packard Corp.,* 288 F.2d 201, 205–206 (6th Cir.

1961). A broad *"in pari delicto"* rationale could render § 17(a) a nullity if it were to preclude suit by any investment company against an affiliate who had purchased securities in apparent violation thereof. Nonetheless, Fund's argument on this point must in this case fail in view of other grounds in the record for concluding that the district court correctly denied the relief sought.

ble. Although it cannot be gainsaid that Colwell falls under the definition of "affiliated person" and that a purely technical violation of the letter of the Act can be said to have occurred, it must be remembered that Congress cannot foresee every event to which its words may one day be applied by those having an interest in so doing. The present transaction was not that of insiders working in their own interest and against that of the investment company or its shareholders. Thus, the circumstances of this case do not constitute the evils against which the Act was directed. Those evils would not be reduced, and the policies of the Act would not be furthered, if rescission were granted here.

■ Indeed, we think that rescission here would be in contravention of the broad policies of the Act. Fund is, in effect, seeking judicial approbation of a practice not unlike those the Act was intended to prevent. For the Act cannot be so construed as to authorize speculation by enabling investment companies to accumulate more than 5 per cent of a corporation's stock, to sell that stock to the corporation (which may be unaware that it is a statutory "affiliate" or that the Act is applicable to the transaction), and then to sue for rescission when, as here, the price has increased.

■ A prayer for rescission is founded on equitable concepts and should be granted "only if a court of equity concludes, from all the circumstances, that it would be equitable to do so." *Mills v. Electric Auto-Lite Co., supra,* 396 U.S. at 388, 90 S.Ct. at 623. The exhibit attached to the complaint establishes that Fund regarded the price it received from Colwell as "fair and reasona-

ble" and that the price of the stock has now risen. The rescission sought by Fund, some eight months after the sale, would produce a windfall profit for Fund and would be manifestly unjust.

■ Having attached to its complaint evidence that the price it received for the stock was fair and reasonable, Fund could not, in good faith, prove at trial that Colwell overreached. The remand sought by Fund would not comport with the interest of judicial economy. The district court could not determine that rescission or other form of relief would be equitable or warranted in light of the policies of the Act. There is, therefore, no basis for a remand for trial.

Finally, Fund argues that a court conducted inquiry into violation of § 17(a) *after* the consummation of the sale usurps the role reserved for the S.E.C. (see § 17(b)) and seriously undermines § 17(a).

■ After consummation of the transaction, proceedings under § 17(b) are no longer possible. Moreover, Fund has no interest in the retrospective exemption of the transaction which can be sought under § 6(c).[6] Having elected to employ the federal judicial process in pursuit of a rescission of its earlier sale, and having invoked the jurisdictional provision, § 44, of the Act, Fund will not be heard to impugn that jurisdiction upon learning that the process it initiated has resulted in a decision it doesn't like.

Accordingly, upon the totality of the circumstances reflected in the record before us, we hold that Fund is not entitled to relief under the Act.

AFFIRMED.

---

**6.** Fund also sued American Bakeries Co. (Bakeries) after a similar stock transaction. *Mathers Fund, Inc. v. American Bakeries Co.,* Civil No. 75C2716 (N.D.Ill., filed Aug. 14, 1975). Proceedings were stayed while Bakeries sought from the S.E.C. a retrospective exemption under § 6(c), permitting exemptions consistent with protection of investors and the purposes fairly intended by the policy and provisions of the Act. The S.E.C. has now rendered its decision. *American Bakeries Co.,* S.E.C. Investment Co. Act Release No. 9924 (Sept. 13, 1977). In granting the exemption, the S.E.C. quoted with approval the following observation of its Division of Investment Management:

There would be a great irony in this case if the Adviser, the professional, is vindicated although it acted like an amateur, while Bakeries, the amateur, is punished for not having acted like a professional.