Evangeline ROSCOM, Plaintiff,

v.

**CITY OF CHICAGO, et al., Defendants.**

**No. 82 C 2138.**

United States District Court,
N.D. Illinois, E.D.

Nov. 3, 1982.

**154**

Donald W. Segal, Segal & Segal, Chicago, Ill., for plaintiff.

Darka Papushkewych, Asst. Corp. Counsel, Stanley Garber, Corp. Counsel, Chicago, Ill., for City defendants.

Penny Nathan Kahan, Asst. State's Atty., Chicago, Ill., Richard M. Daley, State's Atty., for Cook County defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Evangeline Roscom ("Roscom") has sued the City of Chicago ("City") and certain of its officials (collectively "City defendants") and the County of Cook ("County") and certain of its officials ("individual County defendants") under 42 U.S.C. § 1983 ("Section 1983"), charging an allegedly unlawful "strip search." City defendants and individual County defendants [1] have both moved under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss Roscom's Amended Complaint (the "Complaint"). For the reasons stated in this memorandum opinion and order, City defendants' motion is granted and individual County defendants' motion is denied. However the claim for punitive damages against County itself is stricken.

*Facts* [2]

In April 1980 Roscom was arrested on a Chicago streetcorner by Chicago police officers Demetrio Pascual ("Pascual") and Diane Thompson ("Thompson"). Her arrest was pursuant to a warrant charging her with deceptive practices (writing dishonored checks).

Roscom was brought to a police station, questioned on the charges, fingerprinted and placed in a lock-up. Several hours later she experienced severe chest pains and was taken to a hospital emergency room for examination. Upon release from the hospital, Roscom was taken to Cook County Jail, where her admission was processed and she was placed in a cell.

Some time later Roscom was led from the cell with several other female detainees and placed in a room. There she and the others were told to remove all their clothing and bend over in a line before an unidentified

---

1. Individual County defendants' motion seeks dismissal of the Complaint only as to two County officials. But individual County defendants' Mem. 1–3 raises issues that also go to *County's* Section 1983 liability. Moreover, individual County defendants' R.Mem. 1–10 speaks *mostly* of Roscom's charges against "County" and the "County Jail." Apparently the failure to seek dismissal as to County itself was inadvertent, or it was thought to be implicit in the motion for dismissal of the individual officials. In any event, County will remain as a defendant. Complaint ¶ 3f properly alleges County's liability for its policies and customary practices. *See Monell v. Department of Social Services,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2037–2038, 56 L.Ed.2d 611 (1978). Roscom is forewarned, however, that this Court's liberal allowance of her "custom and policy" claim imposes the responsibility to show a reasonable basis for the claim.

2. As usual on motions to dismiss, the Complaint's allegations are taken as true and are construed in the light most favorable to Roscom. *Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977).

sheriff's matron ("Doe").[3] Without touching Roscom, Doe conducted a visual search of Roscom's body while Roscom was naked and bent over in a squat position.

Roscom seeks $100,000 compensatory and $100,000 punitive damages. She does not seek equitable relief.

### City Defendants

■ Complaint ¶¶ 4–5 allege only that Pascual and Thompson arrested Roscom and Pascual questioned her. Roscom does not challenge the lawfulness of her arrest. More importantly, Roscom does not connect Pascual or Thompson in any way to the assertedly unconstitutional strip search. That gap is fatal to Roscom's claims against City defendants.

In this respect the case is controlled by the principle recently reconfirmed in *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir. 1982):

> To recover damages under 42 U.S.C. § 1983, a plaintiff must establish defendants' personal responsibility for the claimed deprivation of a constitutional right.

There is no nexus, either directly or inferentially, between Pascual and Thompson and the claimed constitutional deprivation—the strip search at the County Jail.[4]

It necessarily follows Roscom has also failed to state a claim against Police Captain John Ryle ("Ryle") or Police Superintendent Richard Brzeczek ("Brzeczek") or City itself. Because no Chicago police officer has been connected to the strip search, no factual predicate exists for potential liability of his or her supervisors (*Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976)) or of City (*Monell,* 436 U.S. at 694–95, 98 S.Ct. at 2037–38).

In sum Roscom's Complaint must be dismissed as to all City defendants.

### Individual County Defendants

■ Individual County defendants have made several overlapping contentions in support of their Rule 12(b)(6) motion:

1. Roscom's Complaint is vague and conclusory.

2. Strip searches do not violate any constitutional rights cognizable under Section 1983.

3. No conduct is alleged in the Complaint supporting relief against Cook County Jail Executive Director Phillip Hardiman ("Hardiman") or Cook County Sheriff Richard Elrod ("Elrod").

All are without merit.

### 1. Vagueness of the Complaint

Apparently individual County defendants would return us to the era of common law pleading. Their characterization of the Complaint as "vague and conclusory" might best be met by requiring counsel to stand at the blackboard and copy out the forms of complaint included in the Appendix of Forms to the Federal Rules of Civil Procedure (see Rule 84 as well as Rules 8(a), 8(e)(1) and 8(f)). But for the fact their other contentions are at least responsive to the Complaint's allegations, this Court would be tempted to suspect individual County defendants had not bothered to read the Complaint at all.

### 2. Constitutionality of Strip Searches

Individual County defendants seem to believe *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) held strip

---

**3.** Doe is not a named defendant, although her liability is alleged in Complaint ¶¶ 3d, 11. Roscom's lack of knowledge of Doe's identity does not of course preclude her being "named" as an additional defendant.

**4.** Roscom has attempted to salvage her Complaint against City defendants by arguing for the first time (Ans.Mem. 2–4) those defendants had a positive duty to assure she would not be strip searched at the County Jail. That conten-

tion is based on new factual assertions, a practice impermissible on a Rule 12(b)(6) motion. *Hill v. Trustees of Indiana University,* 537 F.2d 248, 251 (7th Cir.1976). Even were that deficiency cured, Roscom's claim would appear to face serious difficulties under the doctrine of *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir. 1982). That would pose several interesting questions, the resolution of which awaits another day.

searches constitutional as a matter of law (Mem. 1–2; R.Mem. 8–10). Instead *Wolfish* applied a balancing test under which *in certain circumstances* body cavity searches were held not violative of the Fourth Amendment,[5] 441 U.S. at 559–60, 99 S.Ct. at 1884–1885 (citations and footnotes omitted):

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.... A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them in body cavities are documented in this record, App. 71–76, and in other cases .... That there has been only one instance where an MCC inmate was discovered attempting to smuggle contraband into the institution on his person may be more a testament to the effectiveness of this search technique as a deterrent than to any lack of interest on the part of the inmates to secrete and import such items when the opportunity arises.
>
> We do not underestimate the degree to which these searches may invade the personal privacy of inmates. Nor do we doubt ... that on occasion a security guard may conduct the search in an abusive fashion.... Such abuse cannot be condoned. The searches must be conducted in a reasonable manner.... But we deal here with the question whether visual body-cavity inspections ... can *ever* be conducted on less than probable cause. Balancing the significant and le-

gitimate security interests of the institution against the privacy interests of the inmates, we conclude that they can.

Our Court of Appeals has recently confirmed the incorrectness of defendants' per se reading of *Wolfish. Tikalsky v. City of Chicago,* 687 F.2d 175, 181–82 nn. 10–11 (7th Cir.1982). In so doing it pointed to three post-*Wolfish* cases where strip searches were found unconstitutional under the circumstances. *Id.,* at 182 n. 12.

For Roscom's Complaint to survive a motion to dismiss, it is enough that strip searches *may* be unconstitutional. Individual County defendants' claimed policy justifications for their practices (Mem. 2; R.Mem. 3–5, 6, 8–10) are not germane to a Rule 12(b)(6) motion: They go to whether or not, on the facts, the strip search of Roscom was unreasonable. As for the present question—whether that strip search *might have been* unreasonable—*Wolfish* and *Tikalsky* command both an affirmative answer to that question and denial of individual County defendants' motion.

### 3. *Liability of Hardiman and Elrod*

◼ In *Crowder* our Court of Appeals recently defined indirect individual responsibility for Section 1983 deprivations (687 F.2d at 1005):

> ... a defendant's direct participation in the deprivation is not required. An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.

Thus the fact Hardiman and Elrod did not *personally* conduct Roscom's strip search is not determinative of their potential individual liability.

Complaint ¶ 3c alleges Jail Executive Director Hardiman is responsible for imple-

---

**5.** *Wolfish* involved body cavity searches at a federal prison facility and therefore raised issues directly under the Fourth Amendment. In this case the Fourth Amendment would have to be invoked via the Fourteenth Amendment. In accordance with common (though technically incorrect) usage, this opinion will refer directly to the Fourth Amendment.

menting the police policies within Cook County Jail. Substantially the same allegation of responsibility is made of Sheriff Elrod (Complaint ¶ 3e).

Such supervisory officers may be responsible under Section 1983 if their actions in some way *cause* the alleged constitutional deprivation. *See Rizzo,* 423 U.S. at 371, 96 S.Ct. at 604; *see also Crowder,* 687 F.2d at 1005–06 (comparing degrees of participation in unconstitutional deprivation). Again, the *ultimate* liability of Hardiman and Elrod will depend on facts adduced by later proceedings. For Rule 12(b)(6) purposes, however, the Complaint survives individual County defendants' motion to dismiss.

### 4. *County's Liability For Punitive Damages*

▮ Roscom prays $100,000 punitive damages from defendants "and each of them" as an undifferentiated class. County cannot be liable for punitive damages in a Section 1983 action. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). This Court sua sponte strikes the punitive damages claim against County.

### Conclusion

City defendants' motion to dismiss is granted. Individual County defendants' motion to dismiss is denied. Roscom's punitive damages claim is stricken as to County. All County defendants are ordered to answer the Complaint on or before November 15, 1982.