**Evangeline ROSCOM, Plaintiff,**

v.

**CITY OF CHICAGO, et al., Defendants.**

**No. 82C–2138.**

United States District Court,
N.D. Illinois, E.D.

Sept. 12, 1983.

---

Donald W. Segal, Chicago, Ill., for plaintiff.

Richard M. Daley, State's Atty. of Cook County, Randolph T. Kemmer, Asst. State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Evangeline Roscom ("Roscom") originally sued the City of Chicago ("City"), Cook County ("County") and certain City and County officials under 42 U.S.C. § 1983 ("Section 1983") charging violations of the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments.[1] This action remains pending against the County defendants.[2] Roscom seeks compensatory damages of $100,000, and she also asks punitive damages against the individual defendants.[3]

This action has been tried on the facts (to which the parties have stipulated) without a jury. In accordance with Rule 52(a) this Court finds the facts specially and states its conclusions of law thereon in the following Findings of Fact and Conclusions of Law.

### Findings of Fact ("Findings")

1. Roscom was arrested April 5, 1980 by City police officers pursuant to a legal arrest warrant charging deceptive practice (Stip. ¶ 6). Roscom was then taken to the City facility at 1121 South State Street and questioned as to checks Roscom had written that had not been honored by her bank (Stip. ¶ 7).

2. Roscom was fingerprinted and detained at the City facility for several hours. She then experienced severe chest pains and was taken to the Mercy Hospital emergency room for examination (Stip. ¶ 8). After the examination she was returned to the City facility (Stip. ¶ 9).

3. On April 6 Roscom (still at 1121 South State Street) was placed in the custody of the County Sheriff (the "Sheriff") and taken before a judge for the setting of bail (Stip. ¶ 10). When Roscom was unable to post bail, the Sheriff transferred her to the County jail facility at 26th and California, Chicago, Illinois (the "County Jail") (Stip. ¶ 11). Upon Roscom's arrival at the County Jail, pictures were taken, some pa-

---

1. More accurately, of course, all Roscom's claims (because asserted against state actors) are brought under the Fourteenth Amendment. This opinion follows what has come to be conventional usage by referring directly to the underlying Bill of Rights provisions deemed incorporated by the Fourteenth Amendment.

2. This Court's previous memorandum opinion and order (the "Order") granted the motion to dismiss of City and its officials pursuant to Fed.R.Civ.P. ("Rule") 12(b)(6), 550 F.Supp. 153, 155 (N.D.Ill.1982).

3. In the Order this Court sua sponte struck Roscom's request for punitive damages against County, 550 F.Supp. at 157.

perwork was completed and she was then placed in a County Jail cell (Stip. ¶ 12).

4. After several hours Roscom was taken from the County Jail cell to a room with other females, all of whom were ordered to line up in single file and take off their clothes for a search (Stip. ¶ 13). Roscom removed her clothes and proceeded to where the matron was. After a frontal visual search by the matron Roscom was instructed to turn around, spread her legs and bend over for a visual genital area search (Stip. ¶ 14). Only women were in the room when the searches took place (Stip. ¶ 17). At no time during either search did anyone touch Roscom (Stip. ¶ 16). After the search was completed Roscom picked up her clothes, took a shower and was taken back to a County Jail cell (Stip. ¶ 15).

5. County's Department of Corrections General Order 78–23 governs body searches (Stip. ¶ 18 and Ex. 1):

B. An inmate is subject to a search of his or her person, either clothed or unclothed, when there is reasonable cause to believe the inmate may have contraband concealed on his or her person. Such searches or inspections may also be a routine requirement for inmate movement into or out of certain high security risk areas.

1. An unclothed body search includes visual inspection of all body areas, including the anal and genital areas; therefore, correctional personnel will not conduct unclothed body inspection of an inmate of the opposite sex. This does not preclude routine search of clothing worn by an inmate without regard to the sex of the inmate or of personnel making such inspections.

2. Rectal and vaginal searches or inspections of an inmate may not be made by anyone other than qualified medical personnel.

6. In support of the claimed reasonableness of the search in this case, the County defendants have stated the procedure for processing pretrial detainees such as Roscom:

(a) All such detainees are transported to the County Jail without segregation as to their charged offenses.

(b) Upon arrival at the County Jail, such detainees are segregated by sex into holding cells.

(c) As part of their processing of the detainees into the Jail, detainees are visually strip searched and showered and their personal goods inventoried.

7. Roscom argues less intrusive means such as metallic sensory devices are available to vindicate County's interest in security, so that the visual strip search is arbitrary and purposeless.

*Conclusions of Law ("Conclusions")*

1. *Bell v. Wolfish,* 441 U.S. 520, 559–60, 99 S.Ct. 1861, 1884–85, 60 L.Ed.2d 447 (1979) (citations and footnotes omitted) is the seminal authority to be considered in any determination whether a visual strip search of a pretrial detainee is unlawful under the Fourth Amendment.

The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. . . . A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them in body cavities are documented in this record, App. 71–76, and in other cases. . . . That there has been only one instance where an MCC inmate was discovered attempting to smuggle contraband into the institution on his person may be more a testament to the effectiveness of this search technique as a deterrent than to any lack of interest on the part of the inmates to secrete and

import such items when the opportunity arises.

We do not underestimate the degree to which these searches may invade the personal privacy of inmates. Nor do we doubt, as the District Court noted, that on occasion a security guard may conduct the search in an abusive fashion. . . . Such an abuse cannot be condoned. The searches must be conducted in a reasonable manner. . . . But we deal here with the question whether visual body-cavity inspections as contemplated by the MCC rules can *ever* be conducted on less than probable cause. Balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates, we conclude that they can.

■ 2. *Wolfish* teaches the institution's need for the search must be balanced against the invasion of the pretrial detainee's privacy interest. It does not validate all visual strip searches as a matter of law—but it does not necessarily invalidate them either. *See Tikalsky v. City of Chicago,* 687 F.2d 175, 181–82 (7th Cir.1982); *Roscom,* 550 F.Supp. at 155–56.

■ 3. Applying *Wolfish* to this case,[4] this Court concludes the search of Roscom at the County Jail was not constitutionally unreasonable in Fourth and Fourteenth Amendment terms:

(a) *Wolfish* does not require a showing of probable cause for visual strip searching of pretrial detainees (441 U.S. at 560, 99 S.Ct. at 1885).

(b) None of the regularized and non-discriminatory procedures (Findings 4 and 6) is unreasonable as applied to all pretrial detainees.

(c) Irrespective of the crimes charged against pretrial detainees, County may reasonably consider any of them could be carrying weapons or contraband, either brought with the detainee into the County Jail or procured from other persons in the holding cell.

(d) County's interest in the security of its Jail is legitimate. Its visual strip search of all pretrial detainees, carried out (1) by same-sex personnel (2) in a separate room (3) without in any way touching the detainees, is reasonable under the balancing test of *Wolfish*.[5]

(e) Roscom's suggested alternative of electronic sensory devices would not be effective to find non-metallic contraband such as drugs. Moreover, it has not been established that availability of a less intrusive alternative controls in determining whether the method used by law enforcement personnel is reasonable. *See*

4. County's uniform policy, as applied to Roscom, poses a fact issue as to reasonableness of the search. This Court's identification and resolution of that fact issue are consistent with our Court of Appeals' post-*Wolfish* cases dealing with strip searches:

(a) *Salinas v. Breier,* 695 F.2d 1073 (7th Cir.1982) (strip search of an *arrestee* upon probable cause held reasonable);

(b) *Iskander v. Village of Forest Park,* 690 F.2d 126, 129–30 (7th Cir.1982) (reasonableness of search held jury issue when police department customarily conducted searches in a room where passersby could look in and plaintiff (held on a misdemeanor shoplifting charge) alleged someone did look in during her search);

(c) *Tikalsky,* 687 F.2d at 181–82 (reasonableness of strip search simply held fact issue for jury);

(d) *Tinetti v. Wittke,* 620 F.2d 160 (7th Cir.1980) (plaintiff held unreasonably searched after failing to post bond on a non-misdemeanor traffic charge, where she was not in contact with more serious offenders; broader language in District Court opinion, 479 F.Supp. 486 (E.D.Wis.1979) made no reference to then-recent *Wolfish* decision).

5. Neither party directly addresses whether this uniformly applied policy in fact comports with General Order 78–23 (or whether, if it does not, that alone would encroach on Roscom's liberty interest so as to infringe her due process rights). This Court's examination of those questions leads it to conclude:

1. County's uniform policy can readily be reconciled with General Order 78–23 as an administrative determination that the holding cells are in fact "high security risk areas" for purposes of the General Order.

2. Such an administrative determination is entirely reasonable in light of the considerations identified in the language quoted from *Wolfish* in Conclusion 1.

*Wolfish,* 441 U.S. at 559–60 n. 40, 99 S.Ct. at 1885 n. 40.

4. Because Roscom had not yet been convicted of the charged offense, the Eighth Amendment's prohibition against cruel and unusual punishment was inapplicable to her. *Wolfish,* 441 U.S. at 535 n. 16, 99 S.Ct. at 1872 n. 16.

5. Roscom has neither alleged nor proved the strip search was other than routine. It was not imposed as punishment for some reason. Of course, not every detention procedure utilized to further the security of a facility is punishment. Because the strip search procedure utilized in this case was a legitimate one to insure security of the County Jail, no violation of the Due Process Clause is implicated. See *Wolfish,* 441 U.S. at 536–40, 99 S.Ct. at 1872–74.

### Conclusion

For the reasons stated in the Findings and Conclusions, Roscom has failed to establish any constitutional violation by any of the County defendants. Hence she is not entitled to any recovery under Section 1983. This action is dismissed on the merits.