**David MONITOR, Plaintiff,**

v.

**CITY OF CHICAGO, a municipal corporation, Fred Rice, Superintendent of the Department of Police of the City of Chicago, Robert M. Margelewski, Star No. 7170, and other unknown police officers of the Department of Police of the City of Chicago, Defendants.**

**No. 86 C 0806.**

United States District Court, N.D. Illinois, E.D.

Jan. 27, 1987.

---

Adam Bourgeois, Adam Bourgeois, Jr., Adam Bourgeois, Ltd., Chicago, Ill., for plaintiff.

Gregory J. Wojkowski, E. Wayne Robinson, William B. Mackin, Senior Law Student, Corp. Counsel's Office, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The plaintiff David Monitor ("plaintiff") alleges that Robert M. Margelewski ("Margelewski") and other unknown officers of the Chicago Police Department harassed and arrested him solely because he was gay. Certain defendants move this court to dismiss portions of the complaint for failure to state a claim for which relief can

be granted. After a brief review of the facts alleged in the complaint, the court will address the merits of the defendants' motion.

The plaintiff is a clerk at "Chaps," a private men's health club for gay patrons which is located at 116 West Hubbard Street in Chicago, Illinois. Chaps' facilities are solely for members' use. The club does not permit guests.

On February 5, 1985 at approximately 8:00 p.m., the plaintiff was seated at the reception desk of Chaps when a person presented a membership card bearing the name "Kelly Vetegl." The person actually was the defendant Margelewski. Margelewski paid a $10.00 fee, then went to the dressing room in the rear. Five minutes later he requested leave to go to his car and return. When Margelewski returned and the plaintiff unlocked the door to the club, Margelewski held the door open for three men whose names the plaintiff does not know. Margelewski and two of the other men ran past the reception desk. After the plaintiff ordered them to stop, the two men flashed police badges, grabbed the plaintiff, told him he was under arrest and handcuffed him to the third man. The officers refused the plaintiff's two requests to use the bathroom.

One of the two arresting officers asked the plaintiff what Chaps' address was. When the plaintiff refused to answer based on his right to remain silent, the officer struck the plaintiff four times on the face and ear. The officer then grabbed the plaintiff by the throat causing him to gag and choke, banged the plaintiff's head against lockers, struck him on the arm and leg, and attempted to kick him in the testicles. While the officer beat the plaintiff, the plaintiff had a bowel movement in his pants. The officers denied the plaintiff's subsequent requests to clean himself.

The officers searched towel racks, the desk area, file cabinets and files. Using the appropriate keys, they unlocked boxes used by customers for storage and claimed they were doing so because they were searching for drugs. The officers then took the plaintiff to a police wagon and transported the plaintiff and the manager of Chaps to the police station at 113 West Chicago Avenue. The police charged the plaintiff with committing the offense of "Keeper of a House of Prostitution" in violation of Chapter 38, Section 11–17(a)(1) of the Illinois Revised Statutes. The plaintiff's request for aspirin for the pain caused by his beating was refused, as were his requests to clean the excrement from his pants.

After posting bail, the plaintiff was released. The criminal charges were tried on May 28, 1985 and the plaintiff was found to be not guilty.

In addition to Margelewski and the unknown police officers, the plaintiff is suing the Superintendent of Police Fred Rice ("Rice") and the City of Chicago ("City"). The plaintiff's substantive claims are founded on 42 U.S.C. §§ 1983 and 1985 (1981) for violations of the plaintiff's fourth, fifth, eighth and ninth amendment rights.

Under the Federal Rules of Civil Procedure, it is well established that, on a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff. *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir.1977). The court must treat the allegations of the complaint as true, and if it appears reasonably conceivable that at trial the plaintiff could establish a set of facts entitling him to some relief, the court should not dismiss the complaint. *Id.*

# I

## City of Chicago

In paragraph 26 of his complaint, the plaintiff alleges that the City "was responsible for the training, supervision and manner" in which the other defendants executed their authority. In the same paragraph, the plaintiff further alleges the following:

At the time complained of and prior thereto, defendant City of Chicago had a policy permitting their police officers, in-

cluding defendant Robert M. Margelewski and other Unknown Police Officers, to conduct illegal warrantless searches and harass and physically abuse persons under their authority and control.

Complaint ¶ 26, at 7.

■ The plaintiff pled no facts supporting his charge that such a "policy" existed apart from those surrounding the incident on February 5, 1985. The City claims these allegations are insufficient to survive a motion to dismiss. The court agrees.

In *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), the Supreme Court held that a successful § 1983 suit against a municipality requires that the plaintiff establish that some municipal policy, custom or practice proximately caused his injury. According to *Strauss v. City of Chicago,* 760 F.2d 765, 768–69 (7th Cir.1985), boilerplate allegations in a complaint of a "policy" or "custom" will not overcome a motion to dismiss unless accompanied by some fact or facts tending to support the boilerplate allegations. Without this requirement, the concern of the Seventh Circuit in *Strauss* was that the doors to federal court would swing open for a § 1983 claim against a municipality based solely on an isolated event. *See Strauss v. City of Chicago,* 760 F.2d 765, 769–80 (7th Cir.1985). *See also Rodgers v. Lincoln Towing Service,* 771 F.2d 194, 203 (7th Cir.1985). Such a finding would clearly be inconsistent with the *Monell* court's holding that municipalities cannot be held liable under § 1983 solely on a theory of respondeat superior. *See Strauss,* 760 F.2d at 767 (citing *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036).

Applying the *Strauss* test for complaints,[1] the court concludes that the plaintiff's complaint fails. The court thus grants the City's motion and dismisses the § 1983 claim against the City. The court, however, also shares some of the concerns so eloquently expressed by Judge Shadur of this district in *Payne v. City of LaSalle,* 610 F.Supp. 606, 607–09 (N.D.Ill.1985). The dismissal is therefore without prejudice to the plaintiff's amending his complaint to include the City should the plaintiff in good faith allege facts sufficient to satisfy the pleading requirements set forth in *Strauss.*[2]

Courts in this district have also interpreted the policy or custom requirement of *Monell* as applying to § 1985. *See, e.g., Eiland v. Hardesty,* 564 F.Supp. 930, 934 (N.D.Ill.1982) (Marshall, J.). This interpretation is consistent with the theory underlying *Monell,* i.e., that a municipality's liability will only rest upon its own actions, rather than on the theory of respondeat superior. *See Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. The court assumes that the *Strauss* pleading requirements apply to § 1985, so it dismisses the § 1985 claim against the City as well.

## II

### Superintendent Rice

In the complaint, the plaintiff alleges that Superintendent Rice "is responsible for the general management and control of the [Police] Department, including the power and duty to administer the affairs of the Department as its chief administrator; to take disciplinary action against employees; and to issue instructions to employees in the line of their duties." Complaint ¶ 6, at 2–3. The plaintiff also alleges that Rice

1. The cases cited by the plaintiff either are from a different circuit or were decided before *Strauss. See* Memorandum in Opposition of Defendants' Motion to Dismiss at 2–4. Consequently, the plaintiff cites no authority for the proposition that the court is not bound by the holding in *Strauss.*

2. The court briefly notes that according to *Pembaur v. City of Cincinnati,* —— U.S. ——, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986), if a

municipal policymaker with final decision-making authority gives an order to a subordinate to engage in unconstitutional behavior, the order is a sufficient manifestation of governmental authority so as to constitute a statement of municipal policy. In this case, the plaintiff has pled nothing to suggest that a decisionmaker as contemplated in *Pembaur* gave an order which caused the plaintiff's injury.

"purposely and deliberately, caused or permitted the plaintiff ... to be subject to deprivation of his rights, privileges and immunities secured to him by the Constitution of the United States of America." Complaint ¶ 10, at 3–4. Rice claims that the court should dismiss the § 1983 claim against him because the plaintiff has pled no facts implicating him in any significant way. Memorandum in Support of Motion to Dismiss at 6. For the following reasons, the court agrees with Rice only in part.

■ The plaintiff has failed to specify in his complaint whether he is suing Rice in his official or individual capacity. An official-capacity suit is, in all respects other than name, to be treated as a suit against the government entity. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). A government entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation. *Id.,* 105 S.Ct. at 3106. Thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. *Id.* The court has already discussed the plaintiff's failure to allege sufficiently a municipal policy or custom. *See* discussion, *supra* at Part I. For that reason, the court dismisses the § 1983 claim against Rice in his official capacity.

■ The court is satisfied, however, that the plaintiff has alleged sufficient facts to survive a motion to dismiss claims against Rice in his individual capacity. Close reading of the complaint reveals that the plaintiff is suing Rice in his supervisory role as Superintendent of the Chicago Police Department. The plaintiff could maintain a § 1983 action against Rice as a supervisor in two ways. First, he could allege that Rice was recklessly indifferent to violations of his constitutional rights perpetrated by others. Second, he could allege that Rice intentionally participated in the acts which caused the plaintiff injury. *See Murphy v. Chicago Transit Authority,* 638 F.Supp. 464, 470 (N.D.Ill.1986) (Getzendanner, J.). In the complaint, the plaintiff alleges that Rice "purposely and deliberately ... per-mitted the plaintiff ... to be subject to deprivation of his rights...." Complaint ¶ 10, at 3–4. Consequently, the plaintiff has alleged that Rice was intentionally indifferent to violations of the plaintiff's constitutional rights. Given the liberal pleading requirements of the Federal Rules of Civil Procedure, *see* 2A J. Moore, W. Taggart & J. Wicker, Moore's Federal practice ¶ 12.07[2.–5] (2d ed. 1985), the court denies Rice's motion to dismiss the § 1983 claim in his individual capacity for failure to plead facts implicating him in a significant way.

The holding of the Seventh Circuit in the case cited by the City, *Lenard v. Argento,* 699 F.2d 874 (7th Cir.), *cert. denied,* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983), is not inconsistent with the court's holding in this case. In *Lenard,* the Seventh Circuit held that, at a minimum, a plaintiff must show that the supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. *Lenard v. Argento,* 699 F.2d 874, 885 (7th Cir.), *cert. denied,* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983). According to *Lenard,* liability under § 1983 cannot attach to a supervisory official for mere inaction alone. *Id.* There can be liability only where there is an extremely high degree of culpability for inaction. *Id.* The standards outlined in *Lenard* are difficult to apply to a motion to dismiss, for the *Lenard* court was determining the sufficiency of the evidence after a finding of liability after a jury trial. *See id.* at 881. Even so, the court finds that the plaintiff's allegation of purposeful indifference satisfies the *Lenard* test.

### III

### Office Margelewski and the Unknown Officers

#### A. Fourth Amendment Claim

In the complaint, the plaintiff alleges that Margelewski and the unknown officers (collectively hereinafter "the police") violated his fourth amendment rights. The plaintiff, however, fails to allege specifical-

ly in the complaint the basis for the fourth amendment violation. It is only in his response to the motion to dismiss that the plaintiff specifies that he is challenging the unreasonable, warrantless search and seizure of his own person.[3] *See* Memorandum in Opposition at 5. The police allege that the court should dismiss the fourth amendment claim because the plaintiff has not alleged that the police lacked probable cause to arrest him. *See* Reply to Plaintiff's Memorandum in Opposition to Motion to Dismiss at 2.

■ The plaintiff's fourth amendment claim suffers from a more serious defect than the failure to allege a warrantless search without probable cause; the complaint fails even to allege that the police searched the plaintiff after his arrest. The only searches the plaintiff alleges in his complaint concern searches of the locker and file cabinets located in Chaps. *See* Complaint ¶ 16, at 6. The plaintiff apparently is not alleging that those searches violated his fourth amendment rights. *See* Memorandum in Opposition at 5. The court dismisses the fourth amendment claim as without merit on the face of the complaint. *Cf. Roscom v. City of Chicago*, 550 F.Supp. 153, 155 (N.D.Ill.1982) (Shadur, J.) (complaint failed to allege the bare facts necessary to establish a fourth amendment claim).

### B. Fifth Amendment Claim

■ The court dismisses the plaintiff's fifth amendment claim. The fifth amendment protections are applicable to federal, not state action. *See, e.g., Schieb v. Humane Society of Huron Valley*, 582 F.Supp. 717, 725–26 (E.D.Mich.1984). Nowhere does the plaintiff allege that any of the police action taken was under color of federal law.

**3.** Should the plaintiff choose to seek leave to amend his complaint, he should be sure to clarify the basis of each constitutional claim in his amended complaint. After all, the purpose of the complaint is to give the defendant notice of

### C. Eighth Amendment Claim

■ The court also dismisses the eighth amendment claim. Since the plaintiff was never convicted of a crime, the eighth amendment is not implicated. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); *Ingraham v. Wright*, 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 1412–13 n. 40, 51 L.Ed.2d 711 (1977).

### D. Ninth Amendment Claim

The court dismisses the ninth amendment claim. The complaint fails to allege the deprivation of a right not enumerated in the United States Constitution.

### E. Fourteenth Amendment Claim

The plaintiff alleges a fourteenth amendment violation in paragraph 9 of his complaint. In their memorandum in support of their motion to dismiss, the police interpret this fourteenth amendment claim as a claim of unequal treatment in violation of the equal protection clause. The court does not find it necessary to hazard a guess as to what the basis of the fourteenth amendment claim is. Instead, it dismisses the claim for failing to meet the minimal pleading requirements of the federal rules. The true test of a complaint is whether it gives fair notice and states the elements of the claim plainly and succinctly. *See, e.g.,* 2A Moore's Federal Practice ¶ 8.13 at 8–68. Under this test, the plaintiff's fourteenth amendment claim fails.

■ This is not to say that the court cannot envision a legitimate fourteenth amendment claim being brought under the facts as alleged in the complaint. In his memorandum in opposition, the plaintiff alleges that the use of excessive force by the police created a cognizable claim under the eighth amendment. *See* Memorandum in Opposition at 6. An allegation of excessive force is cognizable under § 1983. *See, e.g., Gumz v. Morrissette*, 772 F.2d 1395, 1399

what the plaintiff's claim is and the grounds upon which it rests. *See Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957).

**1300**

(7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986). But the constitutional provision under which most courts ground a § 1983 claim alleging excessive use of force by state officials is the fourteenth amendment. *Id.* The use of such force is treated as a potential deprivation of liberty without due process of law.[4] *Id.*

## IV

### Section 1985(3) Claim

 Assuming that the plaintiff's § 1985 claim is made under subsection (3) of that statute, the court dismisses that claim as to all defendants. In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that § 1985(3) applied only when there is "some racial, or perhaps otherwise class-based, individually discriminatory animus behind the conspirators' action." *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Interpreting *Griffin,* the Ninth Circuit held that homosexuals are not a "class" within the meaning of § 1985(3). *See DeSantis v. Pacific Tel. & Tel. Co., Inc.,* 608 F.2d 327, 333 (9th Cir.1979). Judge Aspen recently adopted the reasoning of the Ninth Circuit and dismissed a § 1985(3) claim in a case growing out of the same incident as this one. *See Nelson v. City of Chicago,* NO. 86 C 0805 (N.D.Ill.July 23, 1986) (WESTLAW, Federal Database, DCT file).[5] This court also adopts the reasoning of the Ninth Circuit and dismisses the § 1985(3) claim on that basis.

---

4. As with the fourth amendment claim, the plaintiff's fourteenth amendment claim is dismissed solely because of poor pleading. The court gives the plaintiff leave to amend his complaint and remedy the infirmities of his original complaint, but it recommends that plaintiff's counsel do the requisite research first. The court will not instruct counsel on appropriate pleading methods a second time.

5. Because the allegations of both this case and the *Nelson* case grown out of the same set of facts, the court recommends that the parties

### CONCLUSION

For the foregoing reasons, the court dismisses the plaintiff's complaint without prejudice.[6] The court gives the plaintiff thirty (30) days to file an amended complaint consistent with the terms of this opinion. If the plaintiff fails to file an amended complaint within thirty (30) days, the court will dismiss the case with prejudice.

---

bring a motion to consolidate this case with the *Nelson* case before Judge Aspen.

6. In their memorandum in support of their motion to dismiss, the defendants also discuss a "malicious prosecution" claim. The complaint, however, does not on its face make such a claim. For the reasons given in Parts III and IV, the court dismisses all claims against Rice in his individual capacity as well without prejudice.